UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

_____
                                                 )

MICHAEL S. ZUMMER,                )

                                                 )

Plaintiff,                           )

                                                 )

v.                                   )     CIVIL ACTION NO. 17-CV-07563

                                                 )

JEFFREY S. SALLET, former-Special Agent   )
in Charge, Federal Bureau of Investigation,   )    SECTION "J"
New Orleans Division, in his individual   )
capacity;                       )

DANIEL HALPHEN EVANS, Assistant   )    MAGISTRATE JUDGE "2"
Special Agent in Charge, Federal Bureau of   )
Investigation, New Orleans Division, Criminal   )
Branch, in his individual capacity;   )
LAURA A. BUCHEIT, former-Assistant   )
Director, Federal Bureau of Investigation,   )
Security Division, in her individual capacity;   )
BRIGETTE CLASS, former-Deputy Assistant   )
Director, Federal Bureau of Investigation,   )
Security Division, in her individual capacity;   )
DANIEL POWERS, former-Section Chief,   )
Federal Bureau of Investigation, Security   )
Division, in his individual capacity;   )
MICHELLE ANN JUPINA, former-Assistant   )
Director, Federal Bureau of Investigation,   )
Records Management Division, in her   )
individual capacity;   )
DAVID M. HARDY, Chief, Federal   )
Bureau of Investigation, Records Management   )
Division, Record/Information Dissemination   )
Section, in his individual and official   )
capacities;   )
MICHAEL G. SEIDEL, Acting/Assistant   )
Section Chief, Federal Bureau of Investigation,   )
Records Management Division,   )
Record/Information Dissemination Section,   )
in his individual capacity;   )
GREGORY A. BROWER, former-Deputy   )
General Counsel, Federal Bureau of   )
Investigation, currently Assistant Director,   )
Federal Bureau of Investigation, Office of   )

1

Congressional Affairs, in his individual     )
capacity;            )
RICHARD R. BROWN, Assistant General   )
Counsel, Federal Bureau of Investigation, in   )
his individual capacity;       )
VALERIE PARLAVE, Executive Assistant   )
Director, Federal Bureau of Investigation,   )
Human Resources Branch, in her individual   )
and official capacities;       )
DAVID W. SCHLENDORF JR., Assistant   )
Director, Federal Bureau of Investigation,   )
Human Resources Division, in his individual   )
capacity;            )
STEPHEN P. REES, Assistant Director,    )
Federal Bureau of Investigation, Records   )
Management Division, in his individual and   )
official capacities;        )
GERALD ROBERTS JR., Assistant Director,   )
Federal Bureau of Investigation, Security   )
Division, in his individual and official    )
capacities; and the        )
FEDERAL BUREAU OF       )
INVESTIGATION;        )
             )
Defendants.         )
             )
_____ )

## FIRST AMENDED COMPLAINT

*Jury Trial Demanded*

## PRELIMINARY STATEMENT

    This case arises from the FBI's decision to suspend the security clearance and then suspend

without pay the lead agent on a case for writing a letter to a federal judge to inform the judge of

concerns that he believed would be relevant to the judge in sentencing the defendant. The judge

subsequently described the letter as containing "legitimate concerns," which the judge shared. The

lead agent, Michael Zummer, did not disclose the letter to the public at that time. Several months

later, the FBI gave him permission to disclose portions of the letter to the public and he then did

so.  He has not disclosed the remaining portions of the letter.  Zummer had a right under the First Amendment to send the letter to the judge and has a right under the First Amendment to disclose the full letter to the public.  He seeks declaratory relief, reinstatement from his suspension, restoration of his pay status, back pay, damages, and an injunction allowing him to release the full text of the letter to the public.

<b>JURISDICTION</b>

1.      This action arises under the First Amendment to the United States Constitution and the Administrative Procedures Act, 5 U.S.C. § 706(2)(B).

2.      Jurisdiction is conferred on this Court by 28 U.S.C. § 1331.

3.      This Court has personal jurisdiction over the Defendants because the alleged incidents occurred within, or the Defendants caused actions to occur within, the confines of this Court.  Although the Defendants' actions took place in New Orleans, Louisiana, Washington, DC, and Winchester, VA, all of the actions affected the Plaintiff in New Orleans, Louisiana where he is a resident and where he was employed by the Federal Bureau of Investigation.

<b>VENUE</b>

4.      Venue is proper in the Eastern District of Louisiana pursuant to 28 U.S.C. § 1391.

<b>PLAINTIFF</b>

5.      Plaintiff Michael S. Zummer is a citizen of the United States.  Plaintiff resides in New Orleans, Louisiana.

<b>DEFENDANTS</b>

6.      Defendant Federal Bureau of Investigation ("FBI") is the agency that employs the Plaintiff.

7.      Defendant Jeffrey S. Sallet was the Special Agent in Charge of the FBI New Orleans Division.  In his position, Sallet was responsible for the administration and operations of the FBI's New Orleans Division employees.  Sallet's previous assignment was as the Chief of the FBI's Public Corruption and Civil Rights Section at FBI Headquarters in Washington, DC.

8.      Defendant Daniel Halphen Evans was and is the Assistant Special Agent in Charge of the FBI New Orleans Division's Criminal Branch.  In his position, Evans was and is responsible for the administration and operations of the FBI's New Orleans Division Criminal Branch employees.  Evans's previous assignment was as the Supervisory Special Agent of the FBI New Orleans Division's Elected Officials Corruption Squad.

9.      Defendant Laura A. Bucheit was the Assistant Director of the FBI's Security Division in Washington, DC.  In her position, she was responsible for the suspension of security clearances of employees, which results in employees' subsequent indefinite suspension without pay.

10.      Defendant Brigette Class was a deputy assistant director in the FBI's Security Division in Washington, DC.  In her position, she was responsible for the suspension of security clearances of employees, which results in employees' subsequent indefinite suspension without pay.

11.      Defendant Daniel Powers was a section chief in the FBI's Security Division in Washington, DC.   In his position, he was responsible for the suspension of security clearances of employees, which results in employees' subsequent indefinite suspension without pay.

12.      Defendant Michelle Ann Jupina was the Assistant Director of the FBI's Records Management Division ("RMD") in Winchester, VA.  In her position, Jupina managed the FBI division responsible for the review of materials submitted by employees for publication under the

First Amendment to the U.S. Constitution.  She was the FBI's final decisionmaker regarding prepublication review requests.  She was also responsible for promulgating the FBI's prepublication review policies.

13.    Defendant David Hardy was and is the Chief of the FBI RMD's Record/Information Dissemination Section.  In his position, Hardy reviewed, or decided not to review, materials submitted by employees for publication under the First Amendment to the U.S. Constitution.

14.    Defendant Michael Seidel was and is the Assistant/Acting Chief of the FBI RMD's Record/Information Dissemination Section.  In his position, Seidel reviewed, or decided not to review, materials submitted by employees for publication under the First Amendment to the U.S. Constitution.

15.    Defendant Gregory A. Brower was a deputy general counsel of the FBI in the agency's Office of General Counsel ("OGC").  In March 2017, he became the Assistant Director for the FBI's Office of Congressional Affairs.

16.    Defendant Richard R. Brown was and is an assistant general counsel for the FBI OGC's Privacy and Civil Liberties unit.

17.    Defendant Valerie Parlave was and is the Executive Assistant Director for the FBI's Human Resources Branch, which was responsible for the FBI's human capital needs.  In her position, Defendant Parlave heard appeals for some human resources actions, oversaw the Security Division, and was Defendant Bucheit's supervisor.

18.    Defendant David W. Schlendorf Jr. was and is the Assistant Director for the FBI's Human Resources Division, which was responsible for some aspects of the FBI's human capital needs.  In his position, Defendant Schlendorf oversaw Human Resources Division, including the

division's approval, or disapproval, of the Plaintiff's "Special Agent Request for Outside Employment" while the Plaintiff was in a suspended status.

19.     Defendant Stephen P. Rees was and is the Assistant Director of the FBI's RMD in Winchester, VA.  In his position, Rees manages the FBI division responsible for the review of materials submitted by employees for publication under the First Amendment to the U.S. Constitution.  He was and is the FBI's final decisionmaker regarding prepublication review requests.

20.     Defendant Gerald Roberts Jr. was and is the Assistant Director of the FBI's Security Division in Washington, DC.  In his position, he was and is responsible for the suspension and revocation of security clearances of employees, which results in employees' subsequent indefinite suspension without pay in the case of clearance suspension, and termination in the case of clearance revocations.

## FACTS

21.     During June 2009, the Plaintiff, while employed as an FBI Special Agent in the New Orleans Division, was assigned to initiate an investigation into Harry J. Morel, Jr., who was then the district attorney of the Louisiana 29th Judicial District covering Saint Charles Parish.  As a result of the investigation into Morel, the FBI and the Saint Charles Parish Sheriff's Office concluded that Morel was a sexual predator who had pressured female defendants and female family members of defendants to give him sexual favors in return for lenient treatment regarding their cases or the cases of family members.  The investigation uncovered over twenty victims spanning a period of twenty years. [1]

---

[1]     All facts set forth in this Complaint are otherwise publicly available.  The only exception is that the Complaint identifies specific actions taken by specific Defendants in response to the Plaintiff's efforts to transmit correspondence to the judge in the Morel case.  That is done in order to set forth the basis for naming them as Defendants.  Also, in

22.     Public sources have indicated that the U.S. Attorney's Office for the Eastern District of Louisiana ("USAO") formally declined to prosecute the case in 2013.

23.     Subsequent to the declination, a new U.S. Attorney, Kenneth Polite, reviewed the case and decided to prosecute Morel.  However, he offered Morel a very lenient plea deal by which Morel could plead guilty to one count of obstruction of justice with a maximum three-year sentence.

24.     On April 20, 2016, Morel pled guilty in open court to the single charge with a three-year maximum sentence.  During a press conference announcing the plea, U.S. Attorney Polite placed part of the blame for the lenient plea on Morel's victims by stating that many of them could not withstand the scrutiny of a trial.

25.     The Plaintiff, who was disturbed about the lenient plea deal and the USAO publicly blaming Morel's victims and evidentiary issues for it, drafted a letter (the "First Letter") to inform Judge Engelhardt of the Plaintiff's concerns about the course of events in the USAO that led to the plea deal.

26.     On May 3, 2016, the Plaintiff gave a copy of the First Letter to Defendant Evans, who was the Assistant Special Agent in Charge of the FBI New Orleans Division Criminal Branch, for review and approval.

27.     The Plaintiff, after waiting nearly a month, asked Defendant Evans on May 31, 2016, about the status of his request for approval to send the First Letter.  Later that day, Defendant Sallet told Plaintiff that, based on the legal analysis of the FBI's Office of General Counsel ("OGC"), he should not send the First Letter to Judge Engelhardt, but instead should go to the Justice Department entities that accepted whistleblower complaints, including the Department of

---

order to supply the full context, the Complaint describes other communications with DOJ and FBI personnel and entities.  The Plaintiff believes that this information may properly be included in this Complaint.

Justice ("DOJ") Office of the Inspector General ("OIG") and DOJ's Office of Professional Responsibility ("DOJ OPR"), and ask for permission to send the First Letter to the Court.

28.     On June 2, 2016, the Plaintiff sent the First Letter to the OIG requesting permission to send it to Judge Englehardt.  He asked for a response by July 8, 2016, to allow the court sufficient time to review the First Letter before Morel's sentencing that was scheduled for August 17, 2016. The OIG informed him that it had referred the matter to DOJ OPR.

29.     After Morel's guilty plea on April 20, 2016, a journalist requested that the Saint Charles Parish Sheriff's Office forward a letter from him to the witnesses and victims in the Morel case to notify them of the journalist's interest in hearing the details of their encounters with Morel. The journalist did not know the identities of the victims and witnesses.  The sheriff's office provided the journalist's letter to the Plaintiff because the sheriff's office did not have the identities and contact information for the victims and witnesses.  When the Plaintiff requested permission from the FBI to send the letter to the victims and witnesses, Defendant Evans denied him permission.

30.     Over two months passed after Plaintiff requested permission from DOJ entities to send the letter to Judge Engelhardt and he still had no response.  On August 3, 2016, the Plaintiff sent a follow-up e-mail to DOJ OPR to ask for a response in time for Morel's upcoming sentencing. Then, on August 8, 2016, still without hearing anything from DOJ OPR, the Plaintiff submitted the First Letter to the FBI prepublication review office at the FBI's Records Management Division ("RMD").  That division is responsible for the review of materials submitted by employees for publication under the First Amendment.  The Plaintiff asked for an answer by August 15, 2016, because sentencing in the Morel case was scheduled for August 17, 2016.   Believing the information to be important not only to Judge Engelhardt but also to the public, the Plaintiff asked

RMD to review the First Letter for release to Judge Engelhardt and to the media.  The Plaintiff had

not previously sent the First Letter to RMD for prepublication review under the First Amendment

because the Chief Counsel of the New Orleans Division of the FBI had advised him against doing

so in early June.  However, with no response from the DOJ, OIG, or DOJ OPR by August 8, he

submitted the First Letter to RMD.

31.    On August 9, 2016, the Plaintiff notified FBI New Orleans management that he

sent the First Letter to FBI RMD for prepublication review.

32.    On August 10, 2016, the Plaintiff sent an e-mail to the DOJ OPR counsel advising

her that he had previously sent her office the First Letter and that he had also sent the First Letter

to FBI RMD for prepublication review.

33.    On August 11, 2016, the DOJ OPR advised the Plaintiff that it would be

inappropriate for it to comment on whether he should send the First Letter to the Court.

34.    On August 12, 2016, Defendant Seidel advised the Plaintiff that FBI RMD would

not review the First Letter for publication because the disclosure fell within the Plaintiff's official

duties.  Later that day, the Plaintiff appealed Defendant Seidel's decision to the Assistant Director

of RMD, Defendant Jupina, for a final agency determination.

35.    On August 15, 2016, the Plaintiff received a clarification from Defendant Seidel

that FBI RMD would review the Plaintiff's First Letter for release to the media, but not for release

to Judge Engelhardt.  Defendant Seidel did not explain why the FBI was willing to review it for

release to the public but not to the Judge.  The Plaintiff responded that he had to treat that decision

as a final agency determination by the FBI, that his First Amendment rights would be irreparably

harmed by the FBI's failure to review the First Letter in time for the August 17, 2016 sentencing,

and that the Plaintiff believed this legal issue had to be decided by the federal court presiding over the Morel case.

36.     The Plaintiff sent the First Letter to Judge Engelhardt by way of his law clerk on the evening of August 15, 2016.  In the First Letter, he included a description of the FBI's response to his efforts to inform the Court of his concerns.  The Plaintiff asked the Court to determine the legality of his submission of the First Letter and to provide the FBI the opportunity to assert any privileges it had.  As discussed more fully later in this Complaint, not until January 26, 2017, did the FBI approve a portion of the First Letter for public release, but, claiming privileges, redacted most of it.  The redacted version of the First Letter with the FBI's cover letter is attached to this Complaint as **Exhibit A**.

37.     On August 16, 2016, the Plaintiff notified FBI management in the New Orleans Division that he had sent the First Letter.  The FBI New Orleans Division Chief Counsel sent the Plaintiff an e-mail stating, among other things, that everything relevant was before the Court in the presentence report and urging him to retract the First Letter. The e-mail included language stating that Defendants Brower and Brown had threatened the possibility of disciplinary action against the Plaintiff if he did not retract the First Letter.

38.     The Plaintiff responded to the Chief Counsel's e-mail by sending her an e-mail stating, among other things, that all relevant facts were not before the Court, that relevance was a matter for the Court to decide, and that he would not retract the First Letter.

39.     On August 24, 2016, Defendant Hardy, responding as the Section Chief of the FBI RMD's Record/Information Dissemination Section, denied the Plaintiff's request to release the First Letter to the public.

40.     On the morning of August 30, 2016, the Plaintiff was instructed by his supervisor, Dameon Hutto, that he was suspended from investigative activity because of the unauthorized disclosure of the First Letter, that he was to move his desk to the empty nurse's office on the second floor of the FBI building, and that he was denied access to any restricted or prohibited cases in the FBI's computer system.   When asked, Hutto said it was the New Orleans Division's decision. (Defendant Sallet was responsible for New Orleans Division assignments, and Defendant Evans was responsible for New Orleans Division Criminal Branch assignments at the time.)

41.     On September 6, 2016, the Plaintiff submitted a second letter (the "Second Letter") to Judge Engelhardt as an addendum to the First Letter.   The Second Letter did not include additional factual material of any significance.   The purpose of the Second Letter was to respond to claims of privilege the Plaintiff assumed the USAO was asserting regarding the First Letter and to state his position that none of those claims of privilege overrode his First Amendment right to send the First Letter.   As noted later in this Complaint, the FBI eventually did, on May 8, 2017, approve a portion of the Second Letter for public release but redacted some of it.   The redacted version of the Second Letter with the FBI's cover letter is attached to this Complaint as **Exhibit B**.

42.     On September 8, 2016, Defendant Jupina affirmed Defendant Seidel's decision that RMD would not review the First Letter for release to Judge Engelhardt under the First Amendment.

43.     On September 15, 2016, Judge Engelhardt issued an Order regarding the Plaintiff's letters.   The Court noted that the First Letter described "considerations regarding the decision to prosecute the Defendant, on what charges, and the evidentiary basis for such considerations."[2]   The

---

[2]     *United States v. Morel*, No. 16-00050-KDE-MBN (E.D. La. Sept. 15, 2016) (order regarding letters from Michael Zummer) [ECF Doc. 45].

Court added that the First Letter "was submitted in connection with Defendant Harry J. Morel, Jr.'s August 17, 2016 sentencing."[3]  The Court explained that the Government had submitted a memorandum regarding its argument against public disclosure of the letter and that "Agent Zummer also supplemented his prior submission to address various privileges he expected the government would assert."[4]

44.     The Court also stated:

> [T]he legitimate concerns of FBI Special Agent Zummer—that the Department of Justice is either unable or unwilling to self-police lapses of ethics, professionalism and truthfulness in its ranks—are shared by the undersigned, particularly over the last few years.  Nevertheless, while the Court finds FBI Special Agent Zummer's correspondence particularly interesting (and troubling, to say the least), other avenues are available for the lodging of such complaints, and pursuit of remedies.  In other words, the sentencing of the defendant in this case does not encompass the airing of such grievances, no matter how legitimate, of investigatory agents who are justifiably concerned about the manner in which the case was handled prior to charges being brought.
>
> Finally, nothing in this Order itself prohibits FBI Special Agent Zummer from making his concerns public by other means.  The Court neither authorizes nor prevents FBI Special Agent Zummer from doing so.  Of course, this Order also does not free FBI Special Agent Zummer from any other obligation or regulation that might apply as a result of his status, all of which can and should be considered by him in determining means of disclosure and publication of his concerns. The Court makes no ruling as to the validity of the government's assertion of privilege/work product, or any other regulatory or employment guideline that may apply to FBI Special Agent Zummer.  In this ruling, the Court determines only that FBI Special Agent Zummer's submissions (the August 15, 2016 letter and the September 6, 2016 supplement) and the Government's September 6, 2016 response shall not be released by the undersigned.[5]

45.     On September 16, 2016, the Plaintiff sent an e-mail to Defendant Evans asking to be returned to investigative work, stating that he would not send letters to any more judges on

---

[3]     *Id.*

[4]     *Id.* at 2.

[5]     *Id.* at 3–4.

other cases.  However, the Plaintiff notified him that he would continue with the prepublication review process to seek the public release of the First and Second Letters to Judge Engelhardt.

46.     On September 16, 2016, the Plaintiff submitted the First Letter to Judge Engelhardt to FBI RMD for prepublication review for release to the public.  Although he had already submitted a draft of that First Letter to prepublication review for release to the Judge and the public on August 8, 2016, he had made small changes to it prior to sending it to the Judge on August 15, 2016.  Accordingly, he submitted the final version on September 16, 2016.  On that same day, he also submitted for release to the public the Second Letter, dated September 6, 2016, to Judge Englehardt.

47.     On September 23, 2016, the Plaintiff asked Defendant Evan for an update on his questions from September 16, 2016.  He received an e-mail from Defendant Evans stating that the following was the FBI's response: "Unfortunately, because you have taken the position that information you personally gather in the performance of your duties as an FBI Special Agent may be disclosed by you as a private citizen should you determine there is a need despite being instructed not to do so and without authorization, you have made it impossible for us to assign you investigative work.  This is not a punishment."  The quoted language appeared to be cut and pasted from another e-mail that the Plaintiff believed to be from FBI OGC.

48.     In response to the September 23, 2016, e-mail, the Plaintiff sent an e-mail to Defendant Evans on September 23, 2016, stating as follows: "Thank you.  What is the FBI's position regarding me disclosing the letters and my current assignment to members of Congress under Title 5 U.S.C. Sec. 7211?"  The Plaintiff never received a response to that inquiry.

49.     On September 30, 2016, the Plaintiff was called to a conference room to meet with Defendant Evans and others.  The Plaintiff was advised that his security clearance had been

suspended indefinitely pending an investigation and that, accordingly, he was suspended from work without pay.  He returned his FBI property and was escorted from the building.

50.    The Plaintiff later received a letter from Defendant Bucheit stating that his security clearance was suspended.  Defendant Bucheit's letter directed the Plaintiff to direct any questions regarding the matter to the Unit Chief of her division's Analysis and Investigations Unit ("AIU").  At the time, the AIU was under the supervision of Defendant Bucheit, in her capacity as the Assistant Director of the Security Division, and also Defendant Powers, in his capacity of chief of a section including AIU, and Defendant Class, in her capacity as the second in command of the Security Division.  Upon information and belief, including the Plaintiff's knowledge of Security Division and FBI activities, Defendants Powers and Class, as the FBI managers between AIU and the division head, were instrumental to Defendant Bucheit's decision to suspend his clearance.

51.    Upon information and belief, the Plaintiff's September 30, 2016, suspension resulted from decisions made by Defendants Sallet and Evans in the FBI's New Orleans Division, Defendants Brower and Brown in the FBI's OGC, and Defendants Bucheit, Class, and Powers in the FBI's Security Division, in retaliation for the First and Second Letters sent to Judge Engelhardt, and also from decisions made by Defendants Seidel and Jupina in the FBI's RMD refusing to approve the transmission of the letters to Judge Engelhardt.

52.    In addition to having previously submitted on June 2, 2016 the proposed first letter to Judge Engelhardt for OIG review, the Plaintiff spoke with an OIG agent on October 5, 2016, explained that he had been suspended, and explained the events relating to the Judge Engelhardt letter that led up to the suspension.  The OIG agent suggested the Plaintiff might contact the United States Office of Special Counsel, but the Plaintiff later learned from that office's website that it

had no jurisdiction over FBI employees at the time.  Otherwise, the OIG agent provided no assistance and, to the Plaintiff's knowledge, took no action.

53.     On October 17, 2016, the Plaintiff sent an e-mail to the staff of U.S. Senator Charles Grassley, Chairman of the Senate Judiciary Committee, describing what happened to him. The Senator's staff quickly responded to the Plaintiff, interviewing him by telephone the following day and asking for records.

54.     On November 15, 2016, Senator Grassley sent letters to then-U.S. Attorney General Loretta Lynch, then-FBI Director James Comey, U.S. Department of Justice Inspector General Michael Horowitz, and DOJ OPR Counsel Robin Ashton, about the Morel case and the suspension of the Plaintiff.[6]  Regarding the FBI's suspension of the Plaintiff's security clearance, Senator Grassley wrote: "That looks like it could be a misuse of the security clearance process to mask retaliation for protected whistleblowing."[7]

55.     As Senator Grassley's letter explains, the Plaintiff utilized the OIG process by making a complaint to the OIG in 2013 about the involvement in the Morel case by an AUSA who the Plaintiff believed had a conflict, and the Plaintiff believed he suffered retaliation from the USAO as a result of that OIG complaint.  (He never was formally told about the results of his complaint until April of 2017 when he indirectly learned that the AUSA was not punished as a result of the investigation.)

56.     After Senator Grassley's letter, the OIG Oversight and Review Division "OIG ORD" contacted the Plaintiff, interviewed him, and said they were interested in investigating his

---

[6]      Letters available at https://www.judiciary.senate.gov/download/grassley-to-justice-dept_-morel-case-conflict, https://www.judiciary.senate.gov/download/grassley-to-fbi_-morel-case-conflict, and https://www.judiciary.senate.gov/download/grassley-to-justice-dept-inspector-general_-morel-case-conflict
[7]      Letter from Senator Charles Grassley, Chairman, U.S. Senate Judiciary Committee, to Director James Comey, Federal Bureau of Investigation, p. 2 (Nov. 15, 2016) *available at* https://www.judiciary.senate.gov/download/grassley-to-fbi_-morel-case-conflict

retaliation complaint.  The OIG ORD also told him that complaints about him had been made to the FBI Inspection Division.  Until the OIG ORD's notification, the FBI Inspection Division had not notified the Plaintiff of these complaints nor had they initiated any investigation into him to his knowledge.  It appears these complaints against him had been made to the FBI Inspection Division after the Plaintiff's communications to Sen. Grassley, or the FBI Inspection Division did not intend to take any action on the complaints if they had been made before Sen. Grassley's letters. The OIG ORD offered to conduct the investigation of the complaints against the Plaintiff at the same time it conducted the investigation of his claim of retaliation.   The Plaintiff agreed to this process.  Those investigations are pending and no results have been announced.

57.     On January 26, 2017, over four months after it was submitted for prepublication review for release to the public, Defendant Hardy approved a heavily redacted version of the Plaintiff's August 15, 2016 First Letter to Judge Engelhardt for release to the public.  Defendant Hardy never explained why his office had been willing to review the First Letter for release to the public but had been unwilling to review it for submission to Judge Englehardt.

58.     On February 14, 2017, the Plaintiff appealed the redactions of the First Letter.

59.     On April 3, 2017, the Plaintiff received a letter dated March 20, 2017, from the FBI Human Resources Division notifying him that the FBI had failed to provide him with a preference for which he was eligible because he was a Marine Corps veteran of the Iraq War, even though his preference status was clear from his First Letter to Judge Engelhardt because the Plaintiff described his experience as an Iraq War veteran on the third page of the letter.  (That mistake had been discovered by the OIG ORD during the course of its review of the Plaintiff's situation after Senator Grassley's letters.)  The FBI stated that as a preference-eligible veteran, he was entitled to administrative leave with pay pending review of the decision to suspend him without pay.  Plaintiff

was provided back pay to November 14, 2016, when his annual leave ran out.  He was provided

with the opportunity to submit to the FBI Human Resources Division a reply to the decision to

suspend him without pay after the decision to suspend his security clearance.  However, the letter

also stated that "[i]t has been a longstanding, essential condition of employment with employees

of the Federal Bureau of Investigation (FBI) be able to obtain and maintain a Top Secret security

clearance."   The letter added that because the Plaintiff's security clearance had been suspended,

"you do not meet an essential condition of employment."    The letter stated that the Plaintiff had

the right to review all materials relied upon as the basis for the decision to suspend him without

pay.  The Plaintiff was subsequently advised that those materials were simply the September 30,

2016 letter from Defendant Bucheit suspending his security clearance, which provided no specific

allegations.   This confirmed the indication in the letter that the FBI Human Resources Division

would not examine or review the propriety of the decision to suspend his security clearance, which

was the reason that he was suspended without pay.

60.     Despite his understanding that the FBI Human Resources Division would not

review the propriety of the decision to suspend his security clearance, on April 20, 2017, the

Plaintiff provided a written submission to the Human Resources Division regarding his suspension

without pay.  He asked to remain on administrative leave with pay pending the OIG's investigation,

which apparently was conducted in response to Senator Grassley's letter, and any subsequent

action by the FBI after receiving the report of the OIG's investigation.   As instructed, the

submission was addressed to Defendant Valerie Parlave, Executive Assistant Director of the FBI's

Human Resources Branch.  In his submission, the Plaintiff described the facts that he believed

were the basis for the suspension of his security clearance and the legal reasoning as to why he

believed he had a right to submit letters to Judge Engelhardt.

61. On May 8, 2017, nearly eight months after it was submitted for review for release to the media, Defendant Hardy authorized the release of a redacted version of the Plaintiff's September 6, 2016 Second Letter to Judge Englehardt for release to the media. The Plaintiff appealed Defendant Hardy's redactions of the Second Letter to Defendant Jupina on May 17, 2017. (The Plaintiff did not receive a copy of the redacted September 6, 2016 letter until May 17, 2017 to determine whether to appeal.)

62. On May 12, 2017, Defendant Parlave, and various other FBI officials, had a telephone conference with the Plaintiff to give him an opportunity to argue against the proposal to suspend him without pay again. The Plaintiff referred to his written submission and asked if any of the officials had any questions for him. They had none.

63. Later that same day, on May 12, 2017, Defendant Parlave signed a letter suspending the Plaintiff indefinitely without pay. The Plaintiff received the letter on May 22, 2017.

64. Upon information and belief, the Plaintiff's ultimate suspension resulted from decisions made by Defendants Sallet and Evans in the FBI's New Orleans Division, Defendants Brower and Brown in the FBI's OGC, Defendants Bucheit, Class, and Powers in the FBI's Security Division, and Defendant Parlave in the FBI's Human Resources Division, in retaliation for his letters to Judge Engelhardt, and also from decisions made by Defendants Seidel and Jupina in the FBI's RMD refusing to approve the transmission of the letters to Judge Engelhardt.

65. On May 15, 2017, Defendant Jupina denied the Plaintiff's appeal of the redactions of his August 15, 2016 First Letter to Judge Engelhardt.

66. Although suspended indefinitely without pay, the Plaintiff was advised that he could only take another job with the permission of the FBI, subject to division head approval. The Plaintiff later learned that, despite being in a non-pay status, he was subject to all of the FBI's and

Justice Department's outside employment rules, including a rule that prevented him from practicing law for compensation even though he was and is a licensed attorney.

67.    As the first step in seeking approval for outside employment, the Plaintiff, on July 7, 2017, submitted to the FBI's Office of Integrity and Compliance ("FBI OIC") a description of a job for which he was applying.    That same day, the FBI OIC advised the Plaintiff that he could proceed with the application and stated that it would interpose no ethical or legal objection to his application. Having obtained approval to proceed from the FBI OIC, the Plaintiff submitted his request to engage in outside employment to the FBI New Orleans Division on July 10, 2017 and it was eventually routed to the FBI Human Resources Division.  Over two months passed with no decision even though the FBI form notifies employees that they will be informed of decisions about outside employment requests in fifteen business days.

68.    On September 19, 2017, the FBI OIC e-mailed Plaintiff's counsel to advise him of the Human Resources Division official decision to deny the Plaintiff's request for outside employment.  The following was cut and pasted into the e-mail, "Mr. Zummer is still on the rolls of the FBI as a special agent and may return to full active status at the conclusion of the current proceedings involving his case.  We, consequently, have considered his request accordingly and find that, given his past investigative responsibilities and potential future assignments, granting his request to work for this particular employer is incompatible with his status as an agent."

69.    Defendant Schlendorf was the division head of Human Resources Division at the time.  Upon information and belief, he made the final decision to deny approval for Plaintiff's outside employment while he is on suspension without pay.

70.    On December 15, 2017, Defendant Rees denied the Plaintiff's appeal of the redactions of his September 6, 2016 Second Letter to Judge Engelhardt.

19

71.     DOJ's prepublication review policy states:

The prepublication review provision [of a nondisclosure agreement] will require Department of Justice employees and other individuals who are authorized to have access to Sensitive Compartmented Information to submit certain material, described further in the agreement, to the Department prior to its publication to provide an opportunity for determining whether an unauthorized disclosure of Sensitive Compartmented Information or other classified information would occur as a consequence of it[s] publication.[8]

72.     The policy also states: "The Assistant Attorney General for National Security or a designee (or, in the case of FBI employees, the Section Chief, Records/Information Dissemination Section, Records Management Division) will respond substantively to prepublication review requests within 30 working days of receipt of the submission."[9]  And further states that "[d]ecisions of the Section Chief, Records/Information Dissemination Section, Records Management Division, concerning the deletion of classified information, may be appealed to the Director, FBI, who will process appeals within 15 working days of receipt."[10]

73.     In an undated, unmarked, previous version of the FBI's prepublication policy (possibly *Prepublication Review Manual* (POL05-0001-RMD), dated September 15, 2005), which was provided to the Plaintiff when he was escorted from the FBI New Orleans Division on September 30, 2016, the policy declares at Section 5.a. (page 14):

The assigned time lines by which reviews must be completed are very important. In United States v. Marchetti in 1974, the Fourth Circuit Court of Appeals held that: "Because we are dealing with the prior restraint upon speech, we think that the CIA must act promptly to approve or disapprove any material which may be submitted to it by Marchetti.  Undue delay would impair the reasonableness of the restraint, and that reasonableness is to be maintained if the restraint is to be enforced.  We should think that, in all events, the maximum period for responding after the submission of material for approval should not exceed thirty days."

---

[8]     28 CFR § 17.18(a).

[9]     28 CFR § 17.18(i).

[10]     28 CFR § 17.18(j)(3).

74.     Despite the reference to *Marchetti* in the previous policy and the DOJ prepublication review policy deadlines, Defendant Jupina sponsored, for FBI executive approval, the June 4, 2015 Prepublication Review Policy Guide for the FBI.  That version of the Guide was approved and is the operable version at the present time.  It states in Section 4.3.1:

> In general, the RMD will respond to a request for a prepublication review within 30 business days of receipt of all required materials….Additional time may be necessary for sensitive, voluminous, or technical submissions.  If the review requires additional time, RMD will provide periodic progress reports and will advise the submitter of the anticipated completion date.[11]

However, at Section 4.2.2 of the 2015 guide, the FBI asserts that "[w]hen a submission contains operational or intelligence matters, it is unrealistic to assume the proposed disclosure will be reviewed within 30 business days."[12]  The 2015 Prepublication Review Policy Guide makes no reference to *Marchetti*.

75.     As mentioned previously, the FBI RMD spent several months reviewing the First and Second Letters to Judge Engelhardt before authorizing the public release of portions of them under the First Amendment.

76.     At the present time, the Plaintiff is prohibited from disclosing to the public those portions of the text of the First and Second letters to Judge Engelhardt that the FBI has censored.

77.     On January 3, 2018, the Plaintiff was provided with a letter dated November 27, 2017, from Defendant Roberts, advising him of Defendant Roberts's decision to revoke the Plaintiff's Top Secret security clearance.   Referring to the Security Clearance Adjudicative Guidelines, the letter explained that the "security adjudication revealed security concerns with regard to Adjudicative Guideline E – Personal Conduct and Adjudicative Guideline K – Handling

---

[11]     Federal Bureau of Investigation, *Prepublication Review Policy Guide*, June 4, 2015, at 10, *available at* https://vault.fbi.gov/2015-prepublication-review-policy-guide.

[12]     *Id.* at 8.

Protected Information.   Your actions revealed evidence of heightened risk related to national security."

78.     Under Adjudicative Guideline E – Personal Conduct, Defendant Roberts wrote:

> The concern is conduct involving questionable judgment, lack of candor, dishonesty, or unwillingness to comply with rules and regulations can raise questions about an individual's reliability, trustworthiness, and ability to protect classified or sensitive information.  Of special interest is any failure to cooperate or provide truthful and candid answers during national security investigative or adjudicative processes.

Defendant Roberts concluded: "Your unauthorized disclosure of your Misconduct letter to an unauthorized recipient is in violation of your FBI employment agreement.  It also displays untrustworthy or unreliable behavior in the unauthorized release of sensitive government protected information."

79.     Under Adjudicative Guideline K – Handling Protected Information, Defendant Roberts wrote:

> The concern is deliberate or negligent failure to comply with rules and regulations for handling protected information—which includes classified and other sensitive government information, and proprietary information—raises doubt about an individual's trustworthiness, judgment, reliability, or willingness and ability to safeguard such information, and is a serious security concern.

Defendant Roberts concluded:

> Despite explicit instructions that you could not file your Misconduct Letter with the court without DOJ permission, you proceeded to do so nonetheless.  Your deliberate failure to comply with the rules and regulations for protecting sensitive information raises doubt about your trustworthiness, judgment, reliability, or willingness and ability to safeguard such information.

80.     In his letter, Defendant Roberts notified the Plaintiff that he could request the investigative file used as the basis for Defendant Roberts' decision and that the Plaintiff would have thirty calendar days to submit a request for reconsideration upon receipt of the revocation

later or the requested investigative file.  On January 4, 2018, the Plaintiff sent a letter to Defendant Roberts requesting his investigative file.  At the present time, the Plaintiff is still awaiting that file.

81.    At the present time, the Plaintiff remains on suspension without pay, pending the final resolution of Defendant Roberts's decision to revoke his security clearance, which would result in the Plaintiff's termination from employment with the FBI.

## COUNT ONE

82.    The foregoing allegations are re-alleged and incorporated herein by reference.

83.    The Plaintiff's right to freedom of speech was violated on September 30, 2016, when his security clearance was suspended and he was consequently suspended from employment with the FBI without pay for an indefinite period, again on May 12, 2017, when that decision was confirmed, on September 19, 2017, when the Plaintiff's request to engage in outside employment was denied by the FBI Human Resources Division, and on November 27, 2017 when the decision was made to revoke his security clearance, all in retaliation for sending letters to Judge Engelhardt, which he had a right to do under the First Amendment.

84.    This count is against Defendants Sallet, Evans, Brower, Brown, Bucheit, Class, Powers, Parlave, Schlendorf, and Roberts in their individual capacities, for their role in suspending the Plaintiff, denying him permission to engage in outside employment, and deciding to revoke his security clearance, and against Defendants Seidel and Jupina, in their individual capacities, for refusing to approve the transmission of the letters to Judge Englehardt, and against Defendants FBI, Roberts, and Parlave, in their official capacities.

## COUNT TWO

85.    The foregoing allegations are re-alleged and incorporated herein by reference.

86.     The refusal from August 24, 2016, until January 26, 2017, to permit release of any portion of the First and Second Letters to Judge Englehardt to the public; the subsequent decision on January 26, 2017, to prohibit release to the public of significant portions of the August 15, 2016 First Letter to Judge Englehardt; the subsequent decision on May 8, 2017 to prohibit release of some portions of the September 6, 2017 Second Letter to Judge Englehardt; the subsequent May 15, 2017 decision to confirm the January 26, 2017 decision; the subsequent December 15, 2017 decision to confirm the May 8, 2017 decision; and the failure to make those decisions in a timely manner all violated the Plaintiff's right to freedom of speech under the First Amendment.

87.     This count is against Defendants Hardy, Jupina, and Rees, in their individual capacities, and against Defendant FBI and Defendants Rees and Hardy, in their official capacities.

## RELIEF

WHEREFORE, Plaintiff respectfully requests relief as follows:

88.     A declaration that the Defendants' actions violated the United States Constitution.

89.     A declaration that the Plaintiff had a First Amendment right to submit the First and Second Letters to Judge Engelhardt.

90.     An injunction requiring the FBI and the Defendants sued in their official capacities in Count One to reinstate the Plaintiff's security clearance and return him to duty at the FBI New Orleans Division investigating public corruption with full back pay and benefits, and requiring the FBI and the Defendants sued in their official capacities to refrain from retaliating against the Plaintiff, and requiring them to prevent retaliation against the Plaintiff for asserting his First Amendment rights.

91.     An injunction requiring the FBI and the Defendants sued in their official capacities in Count Two to permit the Plaintiff to release to the public the August 15, 2016 First Letter and September 6, 2016 Second Letter to Judge Engelhardt without any redactions.

92.     Trial by jury as to all issues so triable.

93.     Compensatory damages from all individual defendants sued in their individual capacities in an amount to be proven at trial.

94.     Punitive damages from all individual defendants in an amount to be proven at trial.

95.     Costs and reasonable attorneys' fees.

96.     Such other relief as the Court deems just and equitable.

Respectfully Submitted,

February 1, 2018.                    */s/ Meredith Grabill*
                                      MEREDITH GRABILL (La. Bar 35484)
                                      **LUGENBUHL, WHEATON, PECK,**
                                          **RANKIN & HUBBARD**
                                      601 Poydras Street
                                      Suite 2775
                                      New Orleans, LA  70130
                                      Telephone: (504) 568-1990
                                      E-mail:  mgrabill@lawla.com

                                      AND

                                      */s/ Robert B. McDuff*
                                      ROBERT B. MCDUFF* (T.A. MS Bar 2532)
                                      767 North Congress Street
                                      Jackson, MS 39202
                                      Telephone:  (601) 969-0802
                                      E-mail:  rbm@mcdufflaw.com

                                      *Counsel for Plaintiff*

                                      *Admitted Pro Hac Vice

25

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served upon parties via the Court's CM/ECF System this 1st day of February 2018.  Notice of this filing will also be sent to counsel for the Defendants via U.S Mail and e-mail to the following:

Glenn Stewart Green
U.S. Dep't of Justice
Torts Branch, Civil Division
P.O. Box 7146
Washington, D.C. 20044
Glenn.greene@usdoj.gov

Notice of this filing will also be sent to the following via U.S. Mail:

| | |
|---|---|
| Office of the U.S. Attorney | The Honorable Jeff Sessions |
| Eastern District of Louisiana | Attorney General of the United States |
| Civil Process Clerk | U.S. Dep't of Justice |
| 650 Poydras Street, Suite 1600 | 950 Pennsylvania Ave. NW |
| New Orleans, LA  70130 | Washington, D.C.  20530-0001 |

*/s/ Meredith S. Grabill*