

U.S. Department of Justice

Federal Bureau of Investigation

Records Management Division
Winchester, VA 22602-4843

May 8, 2017

Mr. Michael S. Zummer
2337 Magazine Street Unit D
New Orleans, LA 70130

Re:  (1) Email dated March 10, 2017 with subject line "Draft Explanation to Media of August 15, 1016 Letter" and attachment titled "Explanation of 8-15-2016 Letter.docx;"
(2) Email dated February 14, 2017 requesting status of the review of September 6, 2016 letter; and,
(3) Email dated February 14, 2017, requesting appeal of redacted August 15, 2016 letter.

Dear Mr. Zummer,

This letter is in response to your requests for review of the above referenced matters for publication pursuant to the Federal Bureau of Investigation's (FBI) Prepublication Review Policy (PRP) and Prepublication Review Policy Guide (0792PG).

In your email of March 10, 2017, you had indicated your intent to publish the attached "Explanation to Media of August 15, 2016 Letter" and the redacted version of the August 15, 2017 letter to members of the media on or after March 20, 2017 unless you hear otherwise from Records Management Division (RMD). Prior to publication, Federal Bureau of Investigation's (FBI) personnel are obligated to comply with the FBI's prepublication review requirements by virtue of the FBI Prepublication Review Policy (PRP), the Prepublication Review Policy Guide (0792PG) and the FBI's Employment Agreement (FD-291) signed by all FBI personnel.

**(1) "Draft Explanation to Media of August 15, 2016 Letter" with the subject line "FBI Authorizes Release of Heavily-Redacted Version of Agent's Letter to Judge":**

The "Draft Explanation to Media of August 15, 2016 letter" with the subject line "FBI Authorizes Release of Heavily-Redacted Version of Agent's Letter to Judge" was reviewed pursuant to the terms of the PRP and we have no suggested redactions for its public release to the media.

(2) **September 6, 2016 letter**.

Your letter dated September 6, 2016, was reviewed pursuant to the terms of the PRP and we have made the appropriate redactions for its public release to the media.

(3) **Appeal of redacted August 15, 2016 letter**.

Your February 14, 2017, appeal of RIDS' redactions to your letter dated August 15, 2016, is being processed separately.

Finally, our findings are based on Bureau publication and security policy and extend only to the release of information contained in your submission. This, however, does not constitute approval by the FBI for you to engage in publication for compensation, sale, or other commercial use of your work. In that regard, you must also comply with the Standards of Ethical Conduct for the Executive Branch.

The Standards limit the circumstances under which an employee may accept compensation for the sale or publication of written works. The Standards also limit the extent to which you may use your official title, position, FBI status, or other indicia of your FBI employment in connection with publishing, advertising or marketing your work, to include mention in any biographical statement related to the work, such as in a "dust jacket." If you intend to mention in your biographical statement that you work for the FBI, you should consult the Office of Integrity and Compliance (OIC).

Again, compliance with the prepublication policy does not relieve you of the obligation to comply with the Standards and other applicable FBI and Office of Government Ethics regulations or policies. Prior to taking any further action with respect to this work, consider applicable regulations as set forth in the FBI Ethics and Integrity Program Policy Guide (0454PG), with particular attention to Sections 4.8. and 4.9. You may also be required to submit an FD-331 Outside Employment Form depending on how you intend to sell or market your work. Please contact the OIC if you have any questions regarding these regulations.

As your work may also impact the mission of the Office of Public Affairs, a copy of this letter has been forwarded to that office for their information.

Should you have any questions, please do not hesitate to contact Kristopher Weart at (540) 868-1697 or via e-mail at fbiprepub@ic.fbi.gov. Thank you for your participation in the FBI's prepublication review process.

Sincerely,

David Hardy
Section Chief
Record/Information
   Dissemination Section

Michael S. Zummer<br>
2337 Magazine St. Unit D<br>
New Orleans, LA 70130

September 6, 2016

The Honorable Kurt D. Engelhardt
United States District Court
  for the Eastern District of Louisiana
C-367 Hale Boggs Federal Building
United States Courthouse
500 Poydras Street
New Orleans, LA 70130

Re:   *United States v. Harry J. Morel, Jr.*, Criminal No. 16-050

Dear Judge Engelhardt:

      In order to aid this Court in its decision regarding the release or return of my letter dated August 15, 2016 (hereinafter "August 15th Letter"), I am submitting additional material to address legal privileges not covered in the August 15th Letter which I anticipate the Government will assert. I assume that the Government will assert the Deliberative Process Privilege, Attorney-Client Privilege, Work Product Doctrine, and Law Enforcement Privilege. As there was no classified material or issues affecting national security in the August 15th Letter, the State Secrets Privilege does not apply.

      I request this Court treat this letter as an addendum to the August 15th Letter and only release it to the public after making a legal determination on the question of my First Amendment rights and the privileges asserted by the Government. There is no additional factual material is this letter.

<u>1. The Privileges Asserted by the Government Do Not Apply to First Amendment Speech.</u>

      "Since the beginnings of our nation, executive officials have claimed a variety of privileges to resist disclosure of information the confidentiality of which they felt was crucial to fulfillment of the unique role and responsibilities of the executive branch of our government." *In re Sealed Case No. 96-3124*, 116 F.3d 550, 557 (D.C. Cir. 1997). "The most frequent form of executive privilege raised in the judicial arena is the deliberative process privilege; it allows the government to withhold documents and other materials that would reveal advisory opinions, recommendations and deliberations comprising part of the process by which governmental decisions and policies are formulated." *Id.* (internal citations and quotations omitted).

      "The attorney-client privilege protects confidential communications made between clients and their attorneys when the communications are for the purpose of securing legal advice

1

or services." *In re Lindsey*, 148 F.3d 1100, 1103 (D.C. Cir. 1998) (internal citations omitted). The attorney-client privilege may apply to Government attorneys "when the Government is dealing with its attorneys as would any private party seeking advice to protect personal interests, and needs the same assurance of confidentiality so it will not be deterred from full and frank communications with its counselors...." *Id.* at 1105 (internal citations and quotations omitted). Related to the attorney-client privilege is the Work Product Doctrine which applies to "written materials obtained or prepared by an adversary's counsel with an eye toward litigation...." *Hickman v. Taylor*, 329 U.S. 495, 511 (1947).

"Federal common law recognizes a qualified privilege protecting investigative files in an ongoing criminal investigation or information which would reveal the identity of confidential informants, although if all information indicating the identity of an informant can be eliminated by excision, the document is discoverable." *Coughlin v. Lee*, 946 F.2d 1152, 1159-60 (5th Cir. 1991) (internal citations omitted).

These privileges are generally asserted by the Government in Grand Jury investigations of public officials and civil litigation. In the Freedom of Information Act (hereinafter "FOIA") context, Exemption 5 of FOIA states that an agency is not obligated to disclose "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." Title 5 U.S.C. Sec. 552(b)(5). "Congress enacted this exemption largely to ensure that agencies not lose the protection traditionally afforded through the evidentiary privileges simply because of the passage of FOIA." *Army Times Pub. Co. v. Department of Air Force*, 998 F.2d 1067, 1069 (D.C. Cir. 1993) (internal citations and quotations omitted). FOIA codifies the Law Enforcement Privilege as Exemption 7 at Title 5 U.S.C. Sec. 552(b)(7).

Without any statutory authority to do so, the Federal Bureau of Investigation (hereinafter "FBI") cites the discretionary privileges in FOIA as a means to prohibit disclosures by employees under the First Amendment. *See* Federal Bureau of Investigation, *Prepublication Review Policy Guide*, June 4, 2015, at p. 11, *available at* https://vault.fbi.gov/2015-prepublication-review-policy-guide. (Despite the admonition on p. ii that if the guide or its contents "are provided to an outside agency, it and its contents are not to be distributed outside of that agency without [] written permission...," it is posted on an FBI website.)

At least one circuit has disagreed with this application of FOIA exemptions to Federal employees' First Amendment speech. When deciding whether the Central Intelligence Agency (hereinafter "CIA") could censor classified material from a former employee, the D.C. Circuit noted that the CIA employee's secrecy agreement "does not extend to unclassified materials or to information obtained from public sources. The government may not censor such material, contractually or otherwise. The government has no legitimate interest in censoring unclassified materials." *McGehee v. Casey*, 718 F.2d 1137, 1141 (D.C. Cir. 1983) (internal citations and quotations omitted). The D.C. Circuit determined, "First, restrictions on the speech of

government employees must protect a substantial government interest unrelated to the suppression of free speech. Second, the restriction must be narrowly drawn to restrict speech no more than is necessary to protect the substantial government interest." *Id.* at 1142-43 (internal citations and quotations omitted).

The D.C. Circuit went on to distinguish the Government's response to a release under FOIA from censorship of employee speech. "In a FOIA case, an individual seeks to compel release of documents in the government's possession. Here, by contrast, McGehee wishes publicly to disclose information that he already possesses, and the government has ruled that his secrecy agreement forbids disclosure." *Id.* at 1147. "This difference between seeking to obtain information and seeking to disclose information already obtained raises McGehee's constitutional interests in this case above the constitutional interests held by a FOIA claimant. As a general rule, citizens have no first amendment right of access to traditionally nonpublic government information." *Id.* (internal citations omitted). "A litigant seeking release of government information under FOIA, therefore, relies upon a statutory entitlement---as narrowed by statutory exceptions---and not upon his constitutional right to free expression." *Id.* "In this case, however, McGehee wishes to publish information he possesses, and the CIA wishes to silence him. Although neither the CIA's administrative determination nor any court order in this case constitutes a prior restraint in the traditional sense upon McGehee or any other party, the entire scheme of prepublication review is designed for the purpose of preventing publication of classified information. McGehee therefore has a strong first amendment interest in ensuring that CIA censorship of his article results from a *proper* classification of the censored portions." *Id.* at 1147-48 (internal citations omitted) (emphasis in original). The court further reasoned that "[b]ecause the present case implicates first amendment rights, however, we feel compelled to go beyond the FOIA standard of review for cases reviewing CIA censorship pursuant to secrecy agreements....[C]ourts should require that CIA explanations justify censorship with reasonable specificity, demonstrating a logical connection between the deleted information and the reasons for classification." *Id.* at 1148.

In a case similar to my disclosure of the August 15th Letter to this Court, the U.S. District Court for the District of Columbia cited D.C. Circuit precedent and held that "censorship is prohibited even if the material falls within a FOIA Exemption, where the Government fails to show with reasonable specificity that its interest in censorship of Government employees, in order to promote the efficiency of public services, outweighs the interest of prospective speakers in free dissemination of those speakers' views. While FOIA provides a useful analytical tool for assessing the strength of the Government's interest under the *Pickering/NTEU* balancing test, it cannot negate or override the First Amendment inquiry." *Wright v. Federal Bureau of Investigation*, 613 F. Supp. 2d 13, 24-25 (D.D.C. 2009) (*referring to Pickering v. Board of Education*, 391 U.S. 563 (1968) and *United States v. National Treasury Employees Union*, 513 U.S. 454 (1995)).

The difference between the case in *Wright* and my experience is that the August 15th Letter was denied any review at all for the purposes of submitting it to this Court. The D.C. District Court described the *Wright* case as "a sad and discouraging tale about the determined efforts of the FBI to censor various portions of a 500-page manuscript, written by a former long-time FBI agent, severely criticizing the FBI's conduct of [an investigation]...." *Wright* at 15. The court also wrote "[i]n its efforts to suppress this information, the FBI repeatedly changed its position, presented formalistic objections to release of various portions of the documents in question, admitted finally that much of the material it sought to suppress was in fact in the public domain and had been all along, and now concedes that several of the reasons it originally offered for censorship no longer have any validity." *Id.*

According to the Supreme Court, the "limited exemptions [to FOIA] do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act; consistent with the Act's goal of broad disclosure, these exemptions have been consistently given a narrow compass." *Department of Interior v. Klamath Water Users Protective Assn.*, 532 U.S. 1, 7-8 (2001) (internal citations and quotations omitted). Using the exemptions in FOIA to prohibit disclosures, as the FBI does, appears to pervert Congress's purpose of the Act. Therefore, this Court should apply the First Amendment balancing test described in Section 2.A. of the August 15th Letter to any Government requests for redaction.

2. Even If Applied to First Amendment Speech, the Privileges Do Not Apply to the Information in the August 15th Letter.

   A. The Deliberative Process Privilege Does Not Apply to the August 15th Letter or the Material Within It.

"An inter- or intra-agency document may be withheld pursuant to the deliberative process privilege if it is: (1) predecisional, *i.e.*, prepared in order to assist an agency decisionmaker in arriving at his decision, and (2) deliberative, *i.e.*, actually related to the process by which policies are formulated." *National Council of La Raza v. Department of Justice*, 411 F.3d 350, 356 (2d Cir. 2005) (internal citations and quotations omitted). "The 'deliberative process' privilege is central among the privileges protected by Exemption 5. However, as with all exemptions under FOIA, the deliberative process privilege must be construed as narrowly as is consistent with efficient government operation." *Army Times* at 1069 (internal citations omitted).

Since the "deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news," *Klamath* at 8-9, there is no reason to prevent the author of the material from waiving the privilege. Without acknowledging the privilege applies, I waive the Deliberative Process Privilege for the August 15th Letter, the notification letter which I submitted for prepublication review, and any document I prepared which is included or referred to within the August 15th Letter, including the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4

▓▓▓ which was submitted to Assistant U.S. Attorney (hereinafter "AUSA") ▓▓▓ my memorandum regarding AUSA ▓▓▓ my analysis of ▓▓▓ my e-mail regarding ▓▓▓ and any communications I wrote regarding my request to send letters to this Court.

The August 15th Letter includes a description of the content of the following inter- or intra-agency documents written by others to which I had access: AUSA ▓▓▓ and communications to me regarding my request to send letters to this Court. (I was never given access to any ▓▓▓) AUSA ▓▓▓ e-mail and communications to me about my request to send letters to this Court were written to me. I am not an agency decision-maker; therefore, those e-mails cannot be predecisional. ▓▓▓ (It may not even apply as an inter- or intra-agency document.) The plea agreement and final factual basis are in the public record.

The August 15th Letter refers to other inter- or intra-agency documents prepared by others without disclosing their content, including: ▓▓▓ The disclosure of the existence of documents would be part of a privilege log in a litigation context anyway. *See Colo. Wild Horse and Burro Coalition, Inc. v. Kempthorne*, 571 F. Supp. 2d 71 (D.D.C. 2008). Therefore, holding that the disclosure of a short description of documents can be withheld under the Deliberative Process Privilege would be an unprecedented expansion of it. The privilege should not be applied to a mere description of documents. (Also, the declination of the case was publicly disclosed by Morel's attorney, Ralph Capitelli, during August 2013 anyway.)

The remainder of the communications I describe in the August 15th Letter were oral. Some courts have recognized that the Deliberative Process Privilege may be considered to prevent testimony of government officials. *See Ridenour v. Kaiser-Hill Co., L.L.C.*, 397 F.3d 925, 938-39 (10th Cir. 2005). However, I could find no precedent to show that it could be applied to oral comments between government officials. Also, the oral communication that I had about my case work was not communicated to me in order to assist an agency decision-maker in arriving at a decision. Most importantly, FOIA Exemption 5 applies to "memorandums or letters." 5 U.S.C. Sec. 552(b)(5). Although the FBI is already expanding FOIA beyond its wording and intended purpose by using it to censor employees' First Amendment speech, the FBI should be limited in this illegal action to the scope stated in the Act.

None of the material in the August 15th Letter is related to the process by which policies are formulated. The material is related to individual case decisions. Thus, the second requirement for the Deliberative Process Privilege is not met.

5

Also, in the litigation context, courts have required an agency head, or a delegated representative, to determine whether to invoke the Deliberative Process Privilege. *See Marriott International Resorts, L.P. v. United States*, 437 F.3d 1302, 1306-08 (Fed. Cir. 2006). This requirement has not been applied in the FOIA context though. By applying FOIA exemptions to Government employee First Amendment speech without any statutory authority to do so, the Executive Branch has been able to strip its employees of a procedural protection when asserting their Constitutional rights that has been provided to litigants against the Government.

Finally, "when the decision-making process itself is the subject of the litigation, the overwhelming consensus and body of law within the Second Circuit is that the privilege cannot bar discovery, and it evaporates." *State v. Salazar*, 701 F. Supp. 2d 224, 237 (N.D.N.Y. 2010) (internal citations and quotations omitted). The subject of the August 15th Letter is ▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Therefore, this Court should consider applying this persuasive authority from the Second Circuit.

The Deliberative Process Privilege does not apply.

### B. Attorney-Client Privilege and Work Product Doctrine Does Not Apply to Federal Prosecutors' Decisions in Criminal Cases Outside of Litigation.

Federal prosecutors in criminal cases do not represent individual private clients. They represent the United States. Therefore, they should be accountable to it. "With respect to investigations of federal criminal offenses, and especially offenses committed by those in government, government attorneys stand in a far different position from members of the private bar. Their duty is not to defend clients against criminal charges and it is not to protect wrongdoers from public exposure." *Lindsey* at 1108.

This Attorney-Client Privilege and Work Product Doctrine are least applicable when the Government attorneys and officials have breached their duties to their client. The Fifth Circuit has held that "[t]he [attorney-client] privilege is not an inviolable seal upon the attorney's lips. It may be waived by the client; and where, as here, the client alleges a breach of duty to him by the attorney, we have not the slightest scruple about deciding that he thereby waives the privilege as to all communications relevant to that issue." *Laughner v. United States*, 373 F.2d 326, 327 (5th Cir. 1967).

Although I am not the Justice Department's client, the United States is, and my August 15th Letter alleges, at the very least, a breach of duty by members of the Justice Department to the United States. Assertions of Attorney-Client Privilege and related Work Product Doctrine in this case are an attempt by Federal prosecutors and other officials to shield themselves from any accountability to their client.

The purpose of the Work Product Doctrine is to shield an attorney's mental impressions from an adversary's counsel in litigation. *See Hickman* at 511-12. During the course of

litigation, the Government would be at an unfair advantage if prosecutors' work product were available to the defense. However, after litigation is over, there is no reason to keep prosecutors' work product secret from their client.

Finally, although I am a licensed attorney in Louisiana, I am not employed as such by the Government. I am not authorized to represent the United States in court, nor do I act as counsel for the FBI. Therefore, none of my communications are subject to the Attorney-Client Privilege or Work Product Doctrine.

Any assertion of the Attorney-Client Privilege or Work Product Doctrine to my August 15th Letter only proves my point that many Federal prosecutors have forgotten whom they serve.

> C. An Analysis of the Law Enforcement Privilege Shows that Nothing from the August 15th Letter Should be Redacted, Because None of the Material in it Compromises a Source, Witness, or Law Enforcement Technique Beyond What Has Been Publicly Exposed by Government Officials.

"To determine whether this qualified [Law Enforcement] privilege bars discovery of given documents, the trial court should consider the ten factors articulated in *Frankenhauser v. Risso* (sic) in balancing the government's interest in confidentiality against the litigant's need for the documents." *Coughlin* at 1160 (internal citations omitted).

The factors from *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D.Pa. Mar.13, 1973) (unpublished) were described by the Fifth Circuit as follows: "(1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; (10) the importance of the information sought to the plaintiff's case." *In re U.S. Department of Homeland Security*, 459 F.3d 565, 570 (5th Cir. 2006).

I recognize the importance of protecting sources and methods. However, the only additional facts regarding the Morel investigation in my August 15th Letter, other than what has already been disclosed in court filings and a press conference, is ███████████ ███████████████████████████████████████████████████████ Morel was already aware of those facts except the ███████████████ Keim had already been

7

named as a witness by the media and Government officials. Other than Keim, I did not name any witnesses or provide any identifying information about them. Furthermore, the August 15th Letter is an attempt to provide some vindication or justice to the victims and witnesses by letting them know that the plea agreement was not a reflection of their quality as witnesses, but a result of improper influence over the U.S. Attorney's Office for the Eastern District of Louisiana. Hopefully, this disclosure will chill future prosecutorial misconduct. The August 15th Letter does not include any information which will affect any ongoing investigation or litigation. No sophisticated investigative techniques are disclosed. The criminal investigation into Morel has been completed. References to other investigations were made in a manner so as not to identify subjects or witnesses. Those references cannot jeopardize any investigation or litigation. The information in the August 15th Letter is not available from any other source and it is an important disclosure of Government misconduct. As to using the names of law enforcement officials and prosecutors in the August 15th Letter, no one's safety will be jeopardized by the use of their names. Criminal investigators are regularly exposed to public scrutiny during the course of investigations and prosecutions. The United States will benefit from additional scrutiny of its attorneys' decision-making, and courts should be notified of prosecutorial misconduct.

      Therefore, I believe an analysis of the *Frankenhauser* factors shows that there is nothing in the August 15th Letter which should be redacted under the Law Enforcement Privilege.

3. The Government Has Waived Any Privileges.

      A. U.S. Attorney Kenneth Polite Waived Any Privileges by Publicly Discussing His Office's Rationale for the Plea Agreement with Morel.

      On April 20, 2016, U.S. Attorney Kenneth Polite held a press conference after Morel's guilty plea. During that press conference, Polite made representations to the media about why the plea agreement with Morel was made. (The full video of the press conference is available at https://vimeo.com/163586549.) (As the attorney for the United States, Polite's ability to comment publicly on a criminal case begs the question of how there can be any Attorney-Client Privilege or Work Product Doctrine regarding a criminal case once it is concluded.)

      "[V]oluntary disclosure of privileged material subject to the attorney-client privilege to unnecessary third parties in the attorney-client privilege context waives the privilege, not only as to the specific communication disclosed but often as to all other communications relating to the same subject matter." *Sealed Case No. 96-3124* at 562 (internal citations and quotations omitted). Polite's remarks at the press conference serve as a waiver to any privileges his office can claim now. Polite represented to the public that the decision to make the plea agreement was based on evidentiary issues and concerns about witnesses. However, Polite did not disclose misconduct that occurred within his office which also contributed to the decision to make the plea agreement with Morel.

8

Although "this all-or-nothing approach [to waiver of privilege in the Attorney-Client context] has not been adopted with regard to executive privileges generally, or to the deliberative process privilege in particular," *id.*, in this case, Polite discussed his office's process as a whole. For that reason, the Deliberative Process Privilege should be waived for all of the material in the August 15th Letter. A public official should not be able to make an incomplete representation to the media about the discussions his office had when making a decision and then hide behind privileges when a government employee exposes the full story behind the decision.

### B. The Government Waived Any Privileges by Violating My First Amendment Rights.

If this Court holds that I had a First Amendment right to send the August 15th Letter to this Court, I argue that the FBI violated that right by refusing to review the letter for privileges. Not only did the FBI refuse to review the long August 15th Letter, but also a much shorter letter seeking to notify this Court of the existence of the August 15th Letter. The Government should not be able to argue that one of its agencies can refuse to review an employee's free speech for privilege and then later claim privileges over that speech.

## 4. Whether Analyzed under a First Amendment Balancing Test or Qualified Privilege Analysis, the Benefit of Disclosing the August 15th Letter Outweighs the Benefit of Secrecy.

### A. Any Recognition of a Privilege Asserted by the Government is Qualified.

"[F]ederal courts do not recognize evidentiary privileges unless doing so promotes sufficiently important interests to outweigh the need for probative evidence." *Lindsey* at 1104 (internal citations and quotations omitted). "The Supreme Court has not articulated a precise test to apply to the recognition of a privilege, but it has placed considerable weight upon federal and state precedent and on the existence of a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth. That public good should be shown with a high degree of clarity and certainty." *Id.* (internal citations and quotations omitted). Thus, the "deliberative process privilege is a qualified privilege and can be overcome by a sufficient showing of need. This need determination is to be made flexibly on a case-by-case, ad hoc basis." *Sealed Case No. 96-3124* at 558 (internal citations omitted). Although the government attorney-client privilege exists, it can be overcome. *See Lindsey* at 1110. Also, "the attorney work product doctrine, like the law enforcement investigatory privilege, is a qualified immunity. It is designed to balance the needs of the adversary system to promote an attorney's preparation against society's general interest in revealing all facts relevant to the resolution of a dispute." *In re Sealed Case No. 87-5290*, 856 F.2d 268, 273 (D.C. Cir. 1988) (internal citations omitted).

### B. In This Context, the Deliberative Process Privilege, Attorney-Client Privilege, and Work Product Doctrine Do Not Encourage Frank and Candid Discussion. They Encourage Dishonesty and Corruption.

9

The purpose behind the Deliberative Process Privilege, Attorney-Client Privilege, and Work Product Doctrine is to promote frank and candid discussions in making decisions. *See Klamath* at 8-9 (regarding Deliberative Process Privilege), *Lindsey* at 1105 (regarding Attorney-Client Privilege), and *Hickman* at 510-11 (regarding Work Product Doctrine). However, I believe my August 15th Letter shows that privileges do not promote candid communications in the context of Federal criminal investigations. They shield Federal prosecutors from accountability which allows them to make any legal determination they want. Instead of promoting efficient government operation, they promote inefficiency and misconduct. Therefore, there is no positive effect to asserting these privileges over communications about criminal cases after the case has been litigated or at least a plea agreement has been reached.

### C. Any Conceivable Purpose of the Privileges is Outweighed by the Need to Expose Government Misconduct.

"[W]here there is reason to believe the documents sought may shed light on government misconduct, the privilege is routinely denied, on the grounds that shielding internal government deliberations in this context does not serve the public's interest in honest, effective government." *Sealed Case No. 96-3124* at 558. The August 15th Letter exposes Government misconduct. The importance of holding public officials, particularly prosecutors and FBI managers, accountable is paramount, because of the power they possess. They have vast power over not only defendants and investigation subjects, but also crime victims, witnesses, and criminal investigators. The importance of exposing the misconduct described in the August 15th Letter outweighs any benefit.

### 5. Conclusion

Privileges designed to give the Government a fair chance in litigation are used as excuses to deny employees' First Amendment rights when litigation is not at issue. These assertions of privilege force an employee who wants to speak out on a matter of public concern, including Government misconduct, to challenge his or her agency in the courts which is costly and jeopardizes that employee's career. This regime chills employee speech, insulates public officials from accountability, and fosters corruption.

I request that this Court protect Government employees' First Amendment rights to disclose misconduct, deny the Government's assertions of privilege, and release the August 15th Letter and this letter to the public.

I thank this Court for its time and effort.

Michael S. Zummer