UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MICHAEL ZUMMER            CIVIL ACTION

VERSUS            No.: 17-7563

JEFFREY SALLET, ET. AL.            SECTION: "J" (2)

## ORDER & REASONS

Before the court is a *Motion for Reconsideration* **(Rec. Doc. 86)** filed by Plaintiff, Michael Zummer, regarding this Court's order and reasons issued on September 5, 2019 (Rec. Doc. 83). This Court has reviewed the memoranda of the parties, the record, and the applicable law, and concludes that Plaintiff's *Motion for Reconsideration* **(Rec. Doc. 86)** should be **DENIED**, insofar as all of Plaintiff's previously dismissed claims remain dismissed but granted insofar as the Court has reconsidered its rationale and Plaintiff's Count Two claims against defendants Hardy, Jupina, and Rees in their individual capacities are hereby dismissed under Rule 12(b)(6) as opposed to 12(b)(1)**.**

## FACTS AND PROCEDURAL BACKGROUND

The Court assumes the reader's familiarity with this case and provides only a brief account of the relevant facts and procedural history. The litigation arises from Plaintiff's decision to send two letters to Honorable Judge Kurt Englehardt, then a federal district judge in the Eastern District of Louisiana, alleging impropriety and malfeasance by the DOJ in the prosecution of Harry Morel Jr. Plaintiff possessed the

information contained in the letters because he was the agent tasked with investigating Morel, as well as being generally aware of goings on in the DOJ due to his status as an FBI agent. Subsequently, the FBI revoked Plaintiff's security clearance and suspended him without pay. The FBI also refused to allow Plaintiff to publish his letters to the public.

Plaintiff then brought this suit in the Eastern District of Louisiana on August 7, 2017. Plaintiff's suit contained two Counts based on two decisions, (1) the revocation of his security clearance and subsequent suspension, and (2) the refusal to allow him to publish the letters to the public. Plaintiff named as defendants every FBI official he believed responsible for the first decision, and every FBI official he believed responsible for the second. All officials were sued in their individual and official capacity.

In the September 5th Order and Reasons, the Court dismissed Plaintiff's Count One claims in their entirety, as well as Plaintiff's Count Two Claims against defendants in their individual capacity, for lack of subject-matter jurisdiction. Thus, the only remaining claim was Plaintiff's Count Two claim against defendants in their official capacity. In his Motion for Reconsideration, Plaintiff seeks reinstatement of all previously dismissed claims.

## **LEGAL STANDARD**

The Federal Rules of Civil Procedure do not expressly allow motions for reconsideration of an order. *Bass v. U.S. Dep't of Agric.*, 211 F.3d 959, 962 (5th Cir. 2000). The Fifth Circuit treats a motion for reconsideration challenging a prior

judgment as either a motion "to alter or amend" under Federal Rule of Civil Procedure 59(e) or a motion for "relief from judgment" under Federal Rule of Civil Procedure 60(b). *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 (5th Cir. 1994).

The difference in treatment is based on timing. If the motion is filed within twenty-eight days of the judgment, then it falls under Rule 59(e). FED. R. CIV. P. 59(e); *Lavespere*, 910 F.2d at 173. However, if the motion is filed more than twenty-eight days after the judgment, but not more than one year after the entry of judgment, it is governed by Rule 60(b). FED. R. CIV. P. 60(c); *Lavespere*, 910 F.2d at 173. In the present case, Plaintiff's *Motion for Reconsideration* (Rec. Docs. 86) were filed within twenty-eight days of the issuance of the Court's order (Rec. Docs. 83). As a result, Plaintiff's *Motions for Reconsideration* are treated as motions to alter or amend under Rule 59(e).

Altering or amending a judgment under Rule 59(e) is an "extraordinary remedy" used "sparingly" by the courts. *Templet v. Hydrochem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). A motion to alter or amend calls into question the correctness of a judgment and is permitted only in narrow situations, "primarily to correct manifest errors of law or fact or to present newly discovered evidence." *Id.; see also Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003). Manifest error is defined as "[e]vident to the senses, especially to the sight, obvious to the understanding, evident to the mind, not obscure or hidden, and is synonymous with open, clear,

visible, unmistakable, indubitable, indisputable, evidence, and self-evidence." *In Re Energy Partners, Ltd.*, 2009 WL 2970393, at *6 (Bankr. S.D. Tex. Sept. 15, 2009) (citations omitted); *see also Pechon v. La. Dep't of Health & Hosp.*, 2009 WL 2046766, at *4 (E.D. La. July 14, 2009) (manifest error is one that "'is plain and indisputable, and that amounts to a complete disregard of the controlling law'") (citations omitted).

The Fifth Circuit has noted that "such a motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before entry of judgment." *Templet*, 367 F.3d at 478-79. Nor should it be used to "re-litigate prior matters that ... simply have been resolved to the movant's dissatisfaction." *Voisin v. Tetra Techs., Inc.*, No. 08-1302, 2010 WL 3943522, at *2 (E.D. La. Oct. 6, 2010). Thus, to prevail on a motion under Rule 59(e), the movant must clearly establish at least one of three factors: (1) an intervening change in the controlling law, (2) the availability of new evidence not previously available, or (3) a manifest error in law or fact. *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005) (to win a Rule 59(e) motion, the movant "must clearly establish either a manifest error of law or fact or must present newly discovered evidence"); *Schiller*, 342 F.3d at 567.

## DISCUSSION

A. **THE NEW EVIDENCE DOES NOT WARRANT RECONSIDERATION OF THE COURT'S DISMISSAL OF PLAINTIFF'S COUNT ONE CLAIMS**

The Court's original dismissal of Plaintiff's Count One claims was based on two separate rationales. First, the Court lacked subject-matter jurisdiction because the Court's jurisdiction over federal employment disputes was preempted by the Civil

4

Service Reform Act ("CSRA"). *Elgin v. Dep't of the Treasury*, 567 U.S. 1, 5 (2012) Second, the Court is barred from considering any claim that requires an inquiry into the merits of an executive agency's security clearance decision. *Dep't of the Navy v. Egan*, 484 U.S. 518; *see also Perez v. FBI*, 71 F.3d 513 (5th. Cir. 1995).

Turning to the first rationale for dismissal, the CSRA provides a judicial review for federal employment disputes wherein the aggrieved employee submits a claim to the Merit Systems Protection Board ("MSPB"), with an appeal right to the Federal Circuit in Washington D.C. The Supreme Court has held that the CSRA review scheme is the exclusive means for federal employees with claims rooted in employment disputes to have those claims redressed. *Elgin*, 567 U.S. 1, 5 (2012). Furthermore, the Fifth Circuit has held that the CSRA bars district court jurisdiction of federal employee claims arising out of federal employment disputes even if that employee does not have access to the CSRA review scheme. *Gonzalez v. Manjarrez*, 558 Fed. Appx. 350, (5th Cir. 2014). Although it is unclear from the record whether Plaintiff himself is entitled to CSRA review of his employment dispute, the answer to that question is ultimately irrelevant. Under *Gonzalez*, this court lacks subject matter jurisdiction over Plaintiff's Count One claim because he is a federal employee bringing a claim based in an employment dispute.

Plaintiff seeks reconsideration of the Court's dismissal of his Count One claims because of "newly discovered evidence." *Templet*, 367 F.3d, 473. Here, the newly discovered evidence is an Office of the Inspector General ("OIG") report dated June 2018. The report details "troubling errors and omissions" in Plaintiff's security

clearance revocation, and recommends the FBI reexamine its security clearance decision in this case (Rec. Doc. 86-3). Plaintiff argues the report provides evidence of a flawed procedure and incompetent administrative functioning within the FBI's security revocation process.

Plaintiff maintains the evidence is relevant for reconsideration under the Court's alternative reason for dismissing Count One — that the Court is barred from hearing claims requiring it to inquire into underlying merits of security clearance decisions. *Perez*, 71 F.3d 513. Namely, Plaintiff urges the Court to assert its jurisdiction to hear this claim because the claim is about the competency of the officials who made the security revocation decision, not the merits of the decision itself.

While sympathetic to Plaintiff's plight and passing no judgment on whether Plaintiff was the victim of an unfair security clearance revocation, nothing in the Plaintiff's newly produced evidence gives the Court reason to doubt its dismissal of Count One because of CSRA preemption. Plaintiff's memorandum in support of his Motion for Reconsideration makes no reference to CSRA preemption and gives no reason why the OIG report affects that basis for dismissal.

Even to the extent the new evidence bears on the Court's holding that it lacks subject matter jurisdiction to hear Plaintiff's claim because of the security clearance revocation subject matter, the Court is not persuaded the OIG report warrants reconsideration of its holding. In the OIG report itself at footnote fifty-three, the report notes "[courts] have declined to review actions closely intertwined with

clearance suspensions, such as…. indefinite suspension from work due to a security clearance suspension." (Rec. Doc. 86-3). This deference applies even when the claim is that the suspension is pretextual, with no legitimate basis whatsoever. *Perez*, 71 F.3d 513. A report by an executive branch agency, the OIG, discussing how another executive agency, the FBI, handles its security clearance revocations does not convince this Court that it should abandon a well-established judicial deference to the executive branch on the issue of security clearance revocations.

B. **THE COURT WAS MANIFESTLY ERRONEOUS IN DISMISSING PLAINTIFF'S COUNT TWO CLAIMS AGAINST INDIVIDUAL CAPACITY DEFENDANTS FOR LACK OF SUBJECT MATTER JURISDICTION**

The Court was clearly erroneous in dismissing Plaintiff's Count Two claims against defendants Hardy, Jupina, and Rees in their individual capacities for lack of subject-matter jurisdiction. Plaintiff is correct when he asserts that the actions of these three defendants, refusing to publish Plaintiff's letter to the public after pre-publication review is not "an adverse employment action" nor does it "require an inquiry into the merits of the FBI's security revocation." (Rec. Doc. 86). Thus, the Court was incorrect to include Plaintiff's claims against these three defendants in its dismissal for lack of subject matter jurisdiction.

The Court will therefore address the merits of Plaintiff's Count Two claims against defendants in their individual capacity by expanding on its comment in footnote number five of its Order and Reasons (Rec. Doc. 83). Because the Court lacks subject-matter jurisdiction there is no need to address in-depth the similarly straight-

7

forward issue of whether the Court should extend a *Bivens* remedy to the present case. It is sufficient to say that even if this Court had jurisdiction over such a claim, the required intrusion into national security determinations would counsel substantial hesitation in extending *Bivens* to a new context under *Ziglar v. Abbasi,* 137 S. Ct. 1843, (2017).

### C. A BIVENS REMEDY SHOULD NOT BE EXTENDED TO PLAINTIFF'S COUNT TWO CLAIM AGAINST DEFENDANTS IN THEIR INDIVIDUAL CAPACITY

"Under Rule 12(b)(6), a claim may be dismissed when a plaintiff fails to allege any set of facts in support of his claim which would entitle him to relief." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (citing *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 561 (5th Cir. 1998)). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). The court is not, however, bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor*, 296 F.3d at 378.

The existence of a *Bivens* remedy "is antecedent" to all other claims on the merits when a United States official is being sued in their individual capacity *Hernandez v. Mesa*, 137 S. Ct. 2003, 2006; *see also Brunson v. Nichols*, 875 F.3d 275, (5th.Cir. 2017). Here, the Court concludes no *Bivens* remedy exists for Plaintiff.

In *Bivens*, the Supreme Court implied a damages remedy against federal agents in their personal capacity for violating the Fourth Amendment's unreasonable search and seizure clause. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, (1971). *Bivens* claims were subsequently extended to gender discrimination under the Fifth Amendment, *Davis v. Passman*, 442 U.S. 228 (1979), and prisoner mistreatment under the cruel and unusual punishment clause of the Eighth Amendment. *Carlson v. Green*, 446 U.S. 14, (1980).

The current Supreme Court stance is expansion of *Bivens* claims is "disfavored judicial activity." *Abbasi*, 137 S. Ct. at 1857. Indeed, for the past 30 years the Supreme Court has "consistently refused" to extend *Bivens* further than the three aforementioned cases. *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 68 (2001).

In *Abbasi*, the Supreme Court laid out a two part test a court must go through when determining whether to grant a *Bivens* claim. First, it must be determined if the claim for *Bivens* relief arises in a new context. *Butts v. Martin*, 877 F.3d 571 (5th. Cir. 2017); *see also Ashcroft v. Iqbal*, 56 U.S. at 675 (2009). If so, the court must decide whether there exist "special factors counseling hesitation in the absence of affirmative action by Congress," *Abbasi*, 137 at 1849, or there exists an "alternative, existing process for protecting the interest." *Wilkie v. Robbins*, 551 U.S. 537, 550

(2007); *see also Butts* 877 F.3d 571. In *Butts*, 877 F.3d 571, the Fifth Circuit explicitly instructed the district court to apply the two-part test on remand.

Accordingly, the Court may now apply the same test to determine whether Plaintiff has a valid *Bivens* remedy in the present case.

A claim for relief provides a new *Bivens* context if it differs "in a meaningful way from previous *Bivens* cases," including arising under a different constitutional right than the three previously recognized claims. Because Plaintiff's claim arises under the First Amendment, and not the Fifth, Fourth, or Eighth, the Court is presented with a new *Bivens* context. *See Reichle v. Howard*, 132 S. Ct. 2088, 2093 n. 4 (2012) ("We have never held that *Bivens* extends to First Amendment claims.").

Because the first prong of the *Butts* test was answered in the affirmative, the Court then proceeds to step two to determine if there exists either 1) any factors to counsel hesitation, or 2) an alternative form of process for protecting Plaintiff's interest. A special factor need only "cause a court to hesitate" to make the court shy away from a new *Bivins* remedy. *Abbasi*, 137 S. Ct. at 1858; *see also Butler v. Porter*, No. 17-230 2019 WL 6920355 (W.D. La. Jan. 2, 2019). Here, the judicial deference owed to the executive branch on issues of national security classification and the large burden that recognizing *Bivens* claims in this context would place on the judiciary and executive agency officials are factors that counsel hesitation. Furthermore, the existence of declaratory and injunctive remedies to protect Plaintiff's interest persuades the Court that extending a *Bivens* remedy to Plaintiff's present claim is inappropriate.

First, the Court addresses the executive branch's primacy in matters of national security policy as a special factor counseling discretion. "[S]eparation of powers principles are or should be central to the analysis" of extending *Bivens* remedies. *Abbasi*, 137 S. Ct. at 1857.

Judicial deference to the executive branch in the realm of national security is a well-established separation of powers principle. *See Dep't of Navy v. Egan*, 484 U.S. 518 (1988) ("the grant of a security clearance to a particular employee, a sensitive and inherently discretionary judgement call, is committed by law to the appropriate agency of the Executive branch"); *Perez*, 71 F.3d 513 (forbidding an inquiry into a security clearance decision because of the "impermissible intrusion by the Judicial Branch into the authority of the Executive Branch over matters of national security").

Second, the Supreme Court in *Abbasi* instructed courts to consider "whether it is necessarily a judicial function to establish whole categories of cases in which federal officers must defend against personal liability claims in the complex sphere of litigation, with all of its burdens." 137 S. Ct. at 1858. This includes not only the burdens on individual officers, but also "projected costs and consequences to the Government itself." *Id.* Here, the burden would be substantial if every decision by an executive agency to redact and classify information subjected an officer to a personal suit for damages. Such suits would slow down decision making at agencies tasked with addressing national security concerns and making judgment calls in real time.

A survey of district court decisions in the wake of *Butts* shows a consistent hesitation in this Circuit to extend *Bivens* remedies to First Amendment claims. *See*

11

Butler, 2019 WL 6920355; *Begay v. Leap*, No. 17-2639, 2019 WL 1318410 (N.D. Texas, March 22, 2019); *White v. Underwood*, No. 18-701 WL 2717154 (N.D. Texas June 28, 2019). Although the aforementioned cases arise out of prisoner's First Amendment retaliation claims, there are similarities to the present case the Court finds persuasive. For example, in *Begay*, the court discusses separation-of-powers— "Congress has delegated the authority to ensure the safety and order of the federal prisons to the Executive Branch," and therefore the court reasoned that extending a *Bivens* remedy to prisoners in the First Amendment context would infringe on the executive branch. WL 1318410 *4. In *Butler*, the court discusses how the extension of a *Bivens* remedy would "increase the costs of defending such claims," and also "unduly limit officers" in the performance of their discretionary duties. WL 6920355 *4.

The factors counseling hesitation raised by fellow district courts are appreciably more relevant in the present case. Here, not only has Congress delegated the authority to classify and redact certain information to the executive branch, but the executive branch has a constitutional right to do so for national security purposes. *See Egan*, 484 U.S. 518. Additionally, federal officers at security agencies need to be free from the threat of *Bivens* lawsuits so as not to be unduly limited in performing their duties.

Finally, persuasive circuit court precedent informs the Court's decision not to extend a *Bivins* remedy to Plaintiff's claim that his First Amendment rights were violated when he was denied his request to publish his letter to the public. *See*

*Bistrian v. Levi*, 912 F. 3d 79 95-96 (3d Cir. 2018) (holding that *Abbasi* bars *Bivens* claims for First Amendment retaliation claims despite First Amendment *Bivins* claims being recognized in the Third Circuit pre-Abbasi); *see also Vega v. United States*, 881 F.3d 1146 (9th. Cir. 2018) (refusing to extend a *Bivens* remedy to a First Amendment access to courts claims post-*Abbasi*, despite generally recognizing First Amendment *Bivens* claims pre-*Abbasi*). Of particular note is the refusal of numerous courts to extend *Bivens* to prisoner's First Amendment claims, despite the explicit recognition in *Abbasi* of a *Bivens* remedy for prisoner's Eighth Amendment claims. 137 S. Ct. at 1858. Plaintiff's present claim does not possess even that close nexus to a recognized *Bivens* claim. Thus, for the foregoing reasons, the Court finds there exist special factors that counsel hesitation in extending a *Bivens* remedy for a First Amendment violation consisting of improperly redacted or classified information.

In the alternative, a *Bivens* remedy is not available to Plaintiff because there exists an "alternative, existing process" to vindicate his interest. Plaintiff's interest is having his letter released to the public. An "alternative remedial structure can take many forms, including administrative, statutory, equitable, and state law remedies." *Vega*, 881 F.3d 1154. In *Abbasi*, the Court stated that a habeas remedy was an adequate alternative to protect the plaintiff's interest as opposed to a suit for money damages. 137 S. Ct. at 1863.

Plaintiff in the present case has access to equitable remedies in the form of declaratory and injunctive relief should he ultimately succeed on his Count Two claim against defendants in their official capacities. A remedy that results in the

publication of Plaintiff's letter is adequate to protect his interests, and thus Plaintiff does not require a *Bivens* remedy to do so.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's *Motion for Reconsideration* **(Rec. Doc. 86)**, is hereby **DENIED** with regards to reinstatement of any of Plaintiff's previously dismissed claims.

**IT IS ORDERED** that the Court's prior dismissal of Plaintiff's Count Two claim against defendants Hardy, Jupina, and Rees in their individual capacities is **AMENDED**, insofar as Plaintiff's claims are hereby dismissed pursuant to Rule 12(b)(6) instead of 12(b)(1).

**IT IS FURTHER ORDERED** Plaintiff's Count Two claim against defendants Hardy, Jupina, and Rees in their individual capacities be dismissed with prejudice, as the Court finds Plaintiff's claims cannot be cured with amendment.

New Orleans, Louisiana this 18th day of October, 2019.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE