UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **MICHAEL S. ZUMMER,** | * | **CIVIL ACTION NO. 17-7563** |
| **PLAINTIFF,** | * | **SECTION: "J" (2)** |
| **V.** | * | |
| | | **JUDGE: BARBIER** |
| **JEFFREY S. SALLET, ET AL.,** | * | |
| **DEFENDANTS.** | * | **MAGISTRATE: WILKINSON** |

\* \* \* \* \* \* \* \*

## OFFICIAL CAPACITY DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S SECOND MOTION TO COMPEL PRODUCTION OF DOCUMENTS

Defendant the Federal Bureau of Investigation ("FBI"); and Defendants David M. Hardy, Valerie Parlave, Stephen P. Rees, and Gerald Roberts, Jr., as sued in their official capacities (collectively, the "Official Capacity Defendants" or "Defendants"), submit this Response in Opposition to Plaintiff's Second Motion to Compel Production of Documents. For the reasons explained below, the motion should be denied. In the alternative, Defendants propose that the Court review *in camera* the limited number of documents for which privileges have been challenged in order to determine whether any of the documents should be produced to Plaintiff Zummer in unredacted form.

## BACKGROUND

The sole remaining claim before this Court is Count Two of the First Amended Complaint as asserted against the Official Capacity Defendants. In Count Two, plaintiff Zummer seeks review of agency action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. *See* Amended Complaint ¶ 1. Specifically, Zummer challenges

> The refusal from August 24, 2016, until January 26, 2017, to permit release of any portion of the First and Second Letters to Judge Englehardt to the public; the subsequent decision on January 26, 2017, to prohibit release to the public of significant portions of the August 15, 2016 First Letter to Judge Englehardt; the subsequent decision on May 8, 2017 to prohibit release of some portions of the September 6, 2017 Second Letter to Judge Englehardt; the subsequent May 15, 2017 decision to confirm the January 26, 2017 decision; the subsequent December 15, 2017 decision to confirm the May 8, 2017 decision; and the failure to make those decisions in a timely manner.

*Id.* ¶ 86. The only remaining relief potentially available to Zummer is "[a]n injunction requiring the FBI and the Defendants sued in their official capacities [ ] to permit the Plaintiff to release to the public the August 15, 2016 First Letter and September 6, 2016 Second Letter to Judge Engelhardt without any redactions." *Id.* ¶ 91.

By order dated July 20, 2020, the Court ordered the Defendants to produce the administrative record in this matter. *See Camp v. Pitts*, 411 U.S. 138, 142(1973) ("the focal point for judicial review [in an APA action] should be the administrative record already in existence, not some new record made initially in the reviewing court"). Production of the administrative record was completed on October 19, 2020.

## SUMMARY OF ARGUMENT

Zummer's arguments for compelling production of the challenged documents are without merit, and therefore, his motion should be denied.

Zummer's challenge to the FBI's use of deletion codes to indicate information redacted on the basis of privilege, Pl.'s Mem. at 6-7, fails. The deletion codes used by the FBI were sufficient, in the context of the 131 documents identified by Zummer, to explain the redactions that were made. To the extent that additional information is required, a formal privilege log has been provided with this Response. *See* Exhibit A – Declaration of Jeffrey B. Veltri. The privilege log and accompanying affidavit are sufficient to show that there is ample support for all of the privileges claimed. If the Court finds that further information is necessary in order to determine whether privileges have been

appropriately claimed, the Court should review the subject documents in camera before ordering production of any unredacted versions.

In addition to being answered in a dispositive way by the privilege log that has been provided, Zummer's arguments for compelling production are without merit. The weight of relevant authority holds that pre-decisional agency documents, including those covered by the attorney-client privilege and the deliberative process privilege, are not properly made part of the administrative record the government must produce in an APA action. *See, e.g.*, *Town of Norfolk v. Army Corps of Engineers*, 968 F.2d 1438, 1455-58 (1st Cir. 1992). Even assuming the pre-decisional materials are properly made part of the administrative record and discoverable here, Zummer's arguments against the assertions of attorney-client and work product privileges, Pl.'s Mem. at 6-7, are unpersuasive. Zummer's claim that the FBI could not have been a client of its own attorneys or attorneys in the United States Attorney's Office for the Eastern District of Louisiana ("USAO-EDLA") for purposes of the attorney-client privilege is wrong. It is well established that "[t]he objectives of the attorney-client privilege apply to *governmental clients*," and that the Government may invoke the attorney-client privilege in civil litigation to protect confidential communications between Government officials and Government attorneys. *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 169-70 (2011) (emphasis added) (citation omitted).

Zummer's argument that any communications involving attorneys employed by the FBI or the USAO-EDLA related to the events underlying Count Two of the Amended Complaint necessarily did not relate to the provision of legal services, Pl.'s Mem. at 8-13, is also wrong. Contrary to Zummer's conclusory claim, every communication involving FBI and USAO-EDLA lawyers was not simply part of an "administrative" decision or process. *See id.* at 9-13. The "administrative issues" associated with Zummer's actions raised numerous legal questions—the same legal questions put before this Court in Zummer's Amended Complaint. Indeed, Zummer

3

sued the FBI seeking APA review because he says FBI officials resolved those legal questions contrary to law. Moreover, when Zummer sought to send his letter to Judge Englehardt, he was injecting himself into an ongoing legal proceeding.

Finally, even if the rule that deliberative-process privileged materials are not properly part of an APA administrative record is not applied here, Zummer's arguments for discovering these materials are unavailing. To the extent that a formal claim of privilege is required to invoke the deliberative process privilege, Pl.'s Mem. at 15, that requirement is satisfied by the declaration of Jeffrey B. Veltri attached to this response. Contrary to Zummer's claim, Pl.'s Mem. at 16, "individual decisions" of appropriate FBI personnel can be covered by the deliberative process privilege. *See Fed. Deposit Ins. Corp. v. Schoenberger, No. CIV. A. 89-2756*, 1990 WL 52863, at *4 (E.D. La. Apr. 24, 1990). Zummer does not assert that any of the challenged documents contain "final opinions' or "final dispositions," which may not be protected by the privilege. *See N.L.R.B.*, 421 U.S. 153–54. And while it is true that the deliberative process privilege *may* be overcome where there is a "reason to believe that the documents sought may shed light on governmental misconduct," *Alexander v. F.B.I.*, 186 F.R.D. 170, 177 (D.D.C. 1999), Zummer's repeated and conclusory claims of misconduct by government officials are not evidence that any misconduct against Zummer actually occurred.

## ARGUMENT

**1.** As an initial matter, Zummer's challenge to the FBI's use of deletion/redaction codes in the document production, Pl.'s Mem. at 6-7, is without merit.[1] Zummer argues that "by failing to provide the description of asserted privileges required by FED. R. CIV. P. 26, the FBI has failed to meet its burden to prove that any of the claimed privileges over these 131 documents are valid, and this Court should compel the FBI to produce all 131 documents unredacted." Pl.'s Mem.

---

[1] An example of the key of the deletion codes used in this production is shown in Exhibit B of Plaintiff's Memorandum. *See* Dkt. No. 108-5 at AR000002.

at 6-7. Zummer is incorrect. In *Graham v. Mukasey*, 247 F.R.D. 205, 207 (D.D.C. 2008), the plaintiff challenged assertions of privilege made via FBI deletion codes, the method used in this production. The district court rejected the plaintiff's "categorical claims of inadequacy," finding that he had not identified specific documents as to which the FBI deletion code used to explain a redaction was inadequate in the context of the document provided. *Id.* at 207-08. The court observed that "[t]here is no requirement that defendants compile all explanations of privilege or other bases for withholding information in a single log. There is also no need, and the federal rules do not require a defendant, to create a log that describes the author, the date, the type of document, and so on, when the requesting party can see that information simply by looking at the document." *Id.* at 207.[2]

Zummer has not identified specific documents for which the FBI redaction codes were inadequate to determine applicability of the privileges claimed. To the contrary, notwithstanding the redactions, Zummer has offered global arguments as to why the privileges claimed by the FBI do not apply to the 131 documents identified.[3] Therefore, this Court should reject Zummer's "categorical claims of inadequacy" of the redaction codes used by FBI in this document production.

    **2.** While the deletion codes used in the production were sufficient, in the context of the documents, to explain the redactions that were made on the basis of privilege, the FBI is providing a

---

[2] As one commentator has succinctly explained:

> While it is true that privilege logs have become customary, it must be emphasized that Rule 26(b)(5) does not require them every time a privilege or work-product claim is made in the context of document discovery. What Rule 26(b)(5) requires is that the claim be made expressly, that it identify the information withheld, and that the basis for the claim be set forth adequately for the other party to assess it.

1 Stephen S. Gensler, Federal Rules of Civil Procedure, Rules and Commentary, Rule 26 (West 2012 Ed.).

[3] In the Memorandum in Support of his motion, Zummer acknowledges that "FBI New Orleans field office communications are identifiable by '(NO) (FBI).' Also, many of FBI NO Chief Counsel's e-mails are identifiable by the signature line with 'Chief Division Counsel.'" Pl.'s Mem. at n. 3.

formal privilege log with this Response covering the 131 documents identified by Zummer. *See* Exhibit A.[4] The privilege log is accompanied by a declaration from Jeffrey B. Veltri. *See id.* The information provided in this log is sufficient to show that there is ample support for all of the privileges claimed. If the Court finds that further information is necessary in order to determine whether privileges have been appropriately claimed, the Court should review the subject documents *in camera* before ordering production of any unredacted versions.

   **3.**  Zummer asserts several categorical arguments contesting the privilege claims in the 131 documents he has identified. To the extent these arguments survive the privilege log that has been provided, and they do not, all of the arguments are without merit.

  To begin, the weight of relevant authority holds that pre-decisional agency documents, including those covered by the attorney-client privilege and the deliberative process privilege, are not properly made part of the administrative record the government must produce in an APA action. *See Town of Norfolk v. Army Corps of Engineers*, 968 F.2d 1438, 1455-58 (1st Cir. 1992); *San Luis Obispo Mothers for Peace v. NRC*, 789 F.2d 26, 44-45 (D.C. Cir. 1986) (en banc); *Madison Cnty. Bldg. & Loan Ass'n v. Fed. Home Loan Bank Bd.*, 622 F.2d 393 395 n.3 (8th Cir. 1980) (dicta); *Comprehensive Community Dev. Corp. v. Sebelius*, 890 F. Supp. 2d 305, 312-13 (S.D.N.Y. 2012); *but see Miami Nation of Indians of Indiana v. Babbitt*, 979 F. Supp. 771, 777-79 (N.D. Ind. 1996); *see also Metcalf v. Daley*, 214 F.3d 1135, 1140-41, 1146 n.4 (9th Cir. 2000) (noting judicial disagreement over whether deliberative material is properly considered part of an administrative record, but not deciding the question). Excluding such materials protects proper agency functioning by ensuring that agency officials engage in full and frank deliberation, *see Madison Cnty.*, 622 F.2d at 395 n.3; *cf. Skelton v. U.S. Postal*

---

[4] In an email sent to counsel for Plaintiff Zummer on November 20, 2020, counsel for the Defendants offered to provide a formal privilege log for the 131 documents. At the subsequent meet-and-confer conference, counsel for Plaintiff Zummer indicated that Zummer would proceed with a motion to compel.

*Serv.*, 678 F.2d 35, 38 (5th Cir. 1982) (employee's "opinions concerning plaintiff's activities, motivations, and strained relationships with the postal employees were clearly a part of the deliberative process by which the agency decided not to take internal disciplinary action against its employees" and "the possibility of disclosure might well have inhibited [him] from advising his superiors"). It follows that an APA litigant like Zummer has no grounds for discovering such pre-decisional materials or even insisting on a privilege log covering them. That is dispositive of Zummer's arguments here.

Even assuming the pre-decisional materials are properly made part of the administrative record and discoverable here, Zummer's arguments fail. Zummer challenges the attorney-client privilege claiming that the attorneys whose communications are in question—lawyers employed by the FBI and the USAO-EDLA—were not communicating with a client because their client was the United States. Pl.'s Mem. at 8-9. Zummer is wrong. The Supreme Court has recognized that "[t]he objectives of the attorney-client privilege apply to *governmental clients*." *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 169 (2011) (emphasis added). The Court has stated that "[u]nless applicable law provides otherwise, the Government may invoke the attorney-client privilege in civil litigation to protect confidential communications between Government officials and Government attorneys. *Id.* at 169-70 (citing 1 Restatement (Third) of the Law Governing Lawyers § 74, Comment b, pp. 573–574 (1998)). "[G]overnmental agencies and employees enjoy the same privilege as nongovernmental counterparts." *Id.* at 170 (quoting 1 Restatement (Third) of the Law Governing Lawyers § 74, Comment b, p. 574 (1998)). Thus, any claim that the FBI could not have been a client of its own attorneys or attorneys in the USAO-EDLA for purposes of the attorney-client privilege is without merit.

Zummer's second overarching argument is that any communications involving FBI or USAO-EDLA attorneys related to the events underlying Count Two necessarily did not relate to the

provision of legal services. Pl.'s Mem. at 8-13. As support for this argument, Zummer offers the conclusory characterization that these government attorneys were "acting as administrators and communicating about the administrative issues of whether to approve the Plaintiff's effort to send his letter to Judge Engelhardt, how to respond once he did send it, and whether to approve it for public release." Pl.'s Mem. at 8. However, Zummer cannot remove the protections of the attorney-client and work product privileges from communications involving FBI and USAO-EDLA lawyers by simply declaring that every such communication was part of an "administrative" decision or process. *See id.* at 9-13. The fatal flaw in this argument is Zummer's failure to acknowledge that the "administrative issues" he has identified also raised numerous legal questions, not the least of which were: the extent, if any, to which Zummer's actions were protected by the First Amendment; the extent to which Zummer was violating the terms of his employment; and the extent to which Zummer could be disciplined for his actions. These are the same legal questions put before this Court in Zummer's Amended Complaint. Indeed, Zummer sued the FBI seeking APA review because he says FBI officials resolved these legal questions contrary to law. Moreover, when Zummer sought to send his letter to Judge Englehardt, he was injecting himself into an ongoing legal proceeding. *See* Dkt. No. 45, Case No. 2:16-cr-00050-KDE-MBN, United States of America v. Harry J. Morel (Order). These facts belie any argument that there were no "necessary legal services" or potential anticipation of litigation associated with the FBI's determinations as to whether to approve Zummer's effort to send his letter to Judge Engelhardt, how to respond once he did send it, and whether to approve it for public release.

4.  Zummer's objections to the FBI's assertions of the deliberative process privilege are without merit. As already explained, the weight of authority holds that deliberative-process privileged materials are not properly part of APA administrative record. But even if that rule is not applied here, Zummer's particular arguments for discovering them lack merit.

The deliberative process privilege protects from discovery government documents that are both pre-decisional, that is, generated before an agency policy is adopted, and deliberative, meaning that they contain opinions, recommendations, proposals and other subjective matters. *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975). The purpose of this privilege is to allow agencies to freely explore possibilities, engage in internal debates, and encourage frank discussion without fear of public scrutiny. *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). In order for the deliberative process privilege to apply, a document must be both "deliberative" and "predecisional." *Vaughn v. Rosen*, 523 F.2d 1136, 1143–44 (D.C.Cir.1975).

To the extent that a formal claim of privilege is required to invoke the deliberative process privilege, Pl.'s Mem. at 15, that requirement is satisfied by the declaration of Jeffrey B. Veltri, attached to this response. *See* Exhibit A.

Zummer's conclusory claim that the challenged communications are "individual decisions regarding the Plaintiff's prepublication review submissions and actions in response to his disclosure to Judge Engelhardt," Pl.'s Mem. at 16, does not support his attack on the deliberative process privilege. "A 'predecisional' document is one prepared in order to assist the decision-maker in arriving at a decision and may include such things as proposals, draft documents, and other subjective documents that *reflect opinions of the writer rather than agency policy. DaSilva v. U.S. Citizenship & Immigration Servs.*, No. CIV.A. 13-13, 2013 WL 4780267, at *4 (E.D. La. Sept. 4, 2013) (citing *Coastal Gas States Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)). Thus, "individual decisions" of appropriate FBI personnel can be covered by the deliberative process privilege. *See Fed. Deposit Ins. Corp. v. Schoenberger, No. CIV. A. 89-2756*, 1990 WL 52863, at *4 (E.D. La. Apr. 24, 1990) (finding deliberative process privilege applicable to documents reflecting "advisory information," "thought processes of writer," "thought processes of agent, request[ing] an opinion by another agent").

9

Contrary to Zummer's argument, *N.L.R.B.* does not prevent application of the deliberative process to documents that "explain the final agency actions the FBI took." *See* Pl.'s Mem. at 16. Rather, *N.L.R.B.* holds that "final opinions" or "final dispositions," which "invariably explain agency action already taken or an agency decision already made" are not protected by the deliberative process privilege, at least in the FOIA context. *N.L.R.B.*, 421 U.S. 153–54. Zummer does not assert that any of the challenged documents contain "final opinions' or "final dispositions" related to Count Two of the Amended Complaint.

Finally, while it is true that the deliberative process *may* be overcome where there is a "reason to believe that the documents sought may shed light on governmental misconduct," *Alexander v. F.B.I.*, 186 F.R.D. 170, 177 (D.D.C. 1999), Zummer's repeated and conclusory claims of misconduct by government officials are not evidence that any misconduct against Zummer actually occurred. The OIG investigation into Zummer's allegation that he was retaliated against for making disclosures to a federal judge determined that there were "no reasonable grounds to believe that any reprisal [against Zummer] occurred." Dkt. No. 108-7 (Pl.'s Mem., Exhibit D) at 1.

## CONCLUSION

For the foregoing reasons, plaintiff Zummer's Second Motion to Compel should be denied.

Dated: December 8, 2020

        Respectfully Submitted,

        JEFFREY BOSSERT CLARK
        Acting Assistant Attorney General
        Civil Division

        PETER STRASSER
        United States Attorney

        C. SALVATORE D'ALESSIO
        Director, Torts Branch

        RICHARD MONTAGUE
        Senior Trial Counsel

        /s/Glenn S. Greene
        GLENN S. GREENE
        Senior Trial Attorney
        U.S. Department of Justice, Civil Division
        Constitutional and Specialized Tort Litigation
        P.O. Box 7146, Ben Franklin Station
        Washington, D.C. 20044
        Telephone: (202) 616-4143
        Fax: (202) 616-4314
        Email: Glenn.Greene@usdoj.gov

        Attorneys for Defendants David M. Hardy, Valerie Parlave, Stephen P. Rees, and Gerald Roberts, Jr., in their official capacities; and the Federal Bureau of Investigation

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing pleading has been served upon all counsel of record to this proceeding by ECF, facsimile, or mailing the same by first class United States mail, postage prepaid on this 8th day of December 2020.

/s/Glenn S. Greene
Glenn S. Greene